D. B. WALSTON v. W. B. COPPERSMITH AND E. COPPERSMITH,
TRADING AS COPPERSMITH BROTHERS.

(Filed 11 September, 1929.)

1. **Accord and Satisfaction A a—Acceptance of check marked in full payment of disputed account discharges debt in absence of agreement to contrary.**

   The acceptance by the creditor of a check stating thereon to be in full for a disputed account is a satisfaction thereof when there is no ambiguity in the transaction and nothing to show that its acceptance was upon a different understanding or agreement.

2. **Evidence D b—Evidence that deceased made agreement that check was not to be in full payment held inadmissible as communication with decedent.**

   Evidence of the declarations of a deceased partner tending to show that the deceased partner made an agreement with plaintiff that check given for a disputed account and marked thereon balance on account was not to be taken as full settlement is incompetent as a transaction or communication with a deceased person prohibited by C. S., 1795.

3. **Same—Where door is thrown open by introduction of evidence of transaction with deceased, evidence of opposition is confined to that transaction.**

   In order to "open the door" for the admission of evidence of transactions or communications with a deceased person, prohibited by C. S., 1795, such evidence must relate to the particular subject-matter of the evidence testified to by the adverse party, or the same transaction, and the door is not necessarily opened to all transactions or fact situations growing out of the controversy.

CIVIL ACTION, tried before *Devin, J.,* at the December Term, 1928, of PASQUOTANK.

The evidence tended to show that in May, 1927, the plaintiff was an Irish potato grower, and the defendants were partners and Irish potato buyers; that the plaintiff made a contract with the defendants to deliver two hundred barrels of Irish potatoes on 14 June, 1927, at $4.75 per barrel. Thereafter, by agreement between the parties, the plaintiff agreed to deliver said potatoes on 7 June, and the price was increased to $5.25 per barrel. It was agreed between the parties that the potatoes furnished under the contract were to be "No. 1 U. S. grade Irish Cobbler Potatoes."

The plaintiff contended and offered evidence tending to show that potatoes of the specified grade were delivered to the defendants.

The defendants offered evidence tending to show that the potatoes delivered were not according to contract, and that the plaintiff was advised that the potatoes would not pass inspection, and thereupon it was

agreed that the potatoes were to be sold for plaintiff's account. The defendants further contended and offered evidence tending to show that they had sold the potatoes for $8.50 per barrel, and that by reason of plaintiff's breach of contract they had suffered a loss of $650. The evidence further tended to show that subsequently the plaintiff agreed to sell to the defendants sixty-six barrels of potatoes at $6.50 per barrel.

On or about 25 June the plaintiff and one of the defendants, E. Coppersmith, met for the purpose of settling the account. The plaintiff contended that the potatoes were shipped according to contract, and the defendants contended that the potatoes were not in accordance with the grade specified, and that as a result thereof the defendants had suffered a loss. After some conversation between the plaintiff and E. Coppersmith the said Coppersmith delivered to the plaintiff a check for $628, containing the following notation thereon: "Balance on potatoes." The plaintiff cashed the check and used the money. At the time of the trial E. Coppersmith was dead. Plaintiff contended that, while he could read, he did not notice the notation on the check. The defendants contended that the receipt of the check by the plaintiff, under the circumstances, constituted a settlement in full.

An issue of indebtedness was submitted to the jury and answered in favor of the plaintiff in the sum of $640. From judgment upon the verdict the defendant appealed.

*Aydlett & Simpson for plaintiff.*
*McMullan & LeRoy for defendants.*

BROGDEN, J. Did the delivery of the check with the notation thereon "balance on potatoes," after a dispute had arisen between the parties, and the subsequent cashing of said check by the plaintiff, constitute an accord and satisfaction?

The principle of law involved in the transaction has been discussed in many cases. The leading authorities upon the subject are assembled in *Hardware Co. v. Farmers Federation,* 195 N. C., 702, 143 S. E., 471. It is not controverted that a dispute had arisen between the parties before the delivery of check. Obviously, if the check had been delivered under the circumstances with the notation thereon, nothing else appearing, the delivery, acceptance and cashing of said check would have undoubtedly constituted a settlement.

The legal principle was expressed in *Supply Co. v. Watt,* 181 N. C., 432, 107 S. E., 451, as follows: "There was no ambiguity or grounds for misunderstanding defendant's tender and offer of settlement. Obviously he wanted to adjust all of their differences at one and the same time. The plaintiff had its choice, and we think it is precluded by its accept-

ance and election knowingly made. The check should have been returned if the conditions of its acceptance were not satisfactory, or at least, the defendant should have been given an opportunity to say whether he would waive the conditions and allow the check to be credited on account."

However, the plaintiff contends that something else does appear and that the acceptance of the check was explained by the conversation occurring between him and the defendant, E. Coppersmith, at the time the check was given and accepted. The defendant, E. Coppersmith, was dead at the time of the trial. The plaintiff testified that the defendant, W. B. Coppersmith, was not present at the time "we were discussing it," nor at the time when the check was given. The plaintiff was asked what statement was made by E. Coppersmith at the time the check was delivered. The defendant objected upon the ground that any statement made by E. Coppersmith was incompetent under C. S., 1795. The witness was permitted to give the following answer: "I told him I could not settle for that. You had not figured it right. I can't settle that way. He said he would get three disinterested potato men, and whatever they say I will give you every cent of it. I said that is as fair as we can do; that is the reason I received the check. The three disinterested men were selected at this time, and I walked over to the place where they were. The three disinterested men were not there with Elisha Coppersmith at the time I received the check."

The defendant contends that this evidence constituted a personal transaction within the purview of C. S., 1795, and was therefore incompetent. The position of the defendants is supported by the authorities, and the evidence should have been excluded.

Hence the result is that the check, with the notation thereon, without other explanation of the intention of the parties, was received and used by the plaintiff. Under these circumstances there was a settlement between the parties, and the motion for nonsuit should have been granted.

The plaintiff insists that the defendant, W. B. Coppersmith, had "opened the door" because he had testified about the purchase of the potatoes and with reference to other facts involved in the transaction. A careful examination of the record, however, does not disclose that the living defendant testified with reference to the giving of the check or the discussion between E. Coppersmith, deceased, and the plaintiff regarding the controverted items. The law is to the effect that if the "door is opened" with respect to one transaction or set of facts, it is not necessarily opened to all transactions or fact situations growing out of the controversy. In other words, if one party opens the door as to one transaction, the other party cannot endeavor to swing it wide in order to

COMMISSIONERS OF CHOWAN v. BANK.

admit another independent transaction. This principle was definitely declared in *Pope v. Pope,* 176 N. C., 283, 96 S. E., 1034, in which the Court declared: "There is nothing inequitable in requiring that the opposing testimony to that given in evidence by the other side should be limited to the same transaction or communication."

New trial.