The plaintiff alleged that he and the defendant entered into a written contract on or about 16 November, 1928, in which the defendant agreed to buy from plaintiff certain telephone and telegraph poles in such numbers and amounts "as the plaintiff might desire to manufacture and deliver to defendants at points and places mentioned in said contract," and subsequently entered into an oral contract to purchase pole timber on certain additional boundaries of land, and in the performance of said contract purchased teams and equipment, and built roads and bridges in order to convey the poles from the woods to the railroad sidings. The plaintiff further alleged that the defendant breached the contract in several particulars specified in the complaint, resulting in damages in the sum of $3,000.
The defendant, filing an answer, denied any and all breaches of contract upon his part, and alleged that the contract expired on 1 January, 1930, and that on 31 December, 1929, there was a full settlement between the parties, and that the defendant tendered to the plaintiff in full settlement a check in words and figures as follows, to wit: "E. F. Conger, Stanton, Virginia, No. 939, Lovingston, Va., 31 December, 1929. Pay to the order of A. E. Bradshaw $93.70, ninety-three and 70/100 dollars. For account in full except 40's not branded. To the First National Bank, Lovingston, Va. M. C. Roush, agent." That thereafter on 8 January, 1930, the said defendant tendered to the plaintiff a check in words and figures as follows: "E. F. Conger, Staunton. *Page 798 
Virginia. No. 954. Lovingston, Va., 8 January, 1930. Pay to the order of A. E. Bradshaw, $23.50, twenty-three and 50/100. In full payment of large 40'ft's. mentioned in last settlement. Settlement ck-939. To the First National Bank of Nelson County, Lovingston, Va. M. C. Roush, agent." The defendant further alleged that the plaintiff cashed the check dated 31 December, 1929.
The plaintiff offered evidence that he declined to accept the check for $23.50, dated 8 January, 1930, and returned the same to the defendant. The plaintiff testified: "The last poles I delivered was sometime during the fall of 1929, I couldn't say just what time. Along about that time the defendant had been very slow about taking my poles from the stations where I delivered them; they would not be taken up as often as a carload had been delivered to the station. . . . They ceased taking up the poles at all sometime during the fall of 1929; Mr. Roush (agent for defendant) and I talked about it all along, and he said he would take them. . . . Sometime about the middle of May, 1929, he told me they had lost the market for the large poles, . . . and on 12 June, in my presence, he told Will Woodard not to bring any more 45's and 50's on the skidway, that they couldn't take them. He never took any more of the 45's and 50's from the woods — he took all that were at the station. . . . He quit taking any sort of poles sometime during the fall; he said he would take them but he didn't do it. We talked about it every time I saw him and I would call him on the telephone."
A subcontractor of plaintiff testified: "Mr. Bradshaw and them got in a dispute towards fall of the year and the others were not taken out; I quit myself. I couldn't tell how many poles were left, I never went over and counted what was left on the ground. . . . It was sometime near August when I quit work." Another witness for plaintiff said that he had heard the plaintiff Bradshaw talking about the matter and testified: "I figured there was going to be a lawsuit, I heard him talk something about it, but I had nothing to do with it. . . . I had heard Mr. Bradshaw say it looked like he was going to have to law to get his rights. I heard Mr. Roush say he couldn't take up those heavy poles, and I figured there might be a lawsuit." The plaintiff Bradshaw, was recalled and testified: "It was about the middle of May when Mr. Roush got careless about taking up my poles and the longer the worse. This was in 1929. . . . This check dated 31 December, for $93.70, is endorsed by me, and I received money for it." With reference to the check, a witness for plaintiff said: "The check for $93.70, dated 31 December, 1929, was given in settlement of cut *Page 799 
backs and on poles on the yard at Epps Spring. . . . This check was given when Mr. Bradshaw and I were present, but nothing was said about a settlement of the contract, it was these cut backs."
The following issues were submitted to the jury:
1. "Did the plaintiff and the defendant enter into the contract referred to in the complaint?"
2. "Did the plaintiff and the defendant make a final settlement of all matters referred to in said contract, except as to large 40's not branded on 31 December, 1929, as alleged in the answer?"
3. "Did the defendant thereafter tender to the plaintiff the correct amount for the large 40's referred to in the settlement of 31 December, as alleged in the answer?"
4. "Did the defendant breach the contract, as alleged in the complaint?"
5. "If so, what damages, if any, is the plaintiff entitled to recover?"
The jury answered the first issue "Yes," the second issue "Yes," the third issue "Yes," the fourth issue "No," and did not answer the fifth issue.
The trial judge charged the jury to answer the second issue "Yes." The court further charged the jury that in any event the plaintiff was entitled to recover $23.50.
From judgment upon the verdict the plaintiff appealed.
This Court, in Walston v. Coppersmith, 197 N.C. 407, 149 S.E. 381, said: "It is not controverted that a dispute had arisen between the parties before the delivery of the check. Obviously, if the check had been delivered under the circumstances with the notation thereon, nothing else appearing, the delivery, acceptance and cashing of said check would have undoubtedly constituted a settlement." Whether a dispute has arisen between the parties, before a check purporting to constitute a settlement in full, has been delivered by the party to be charged, constitutes an issue of fact for a jury. Hardware Co. v. Farmers Federation, 195 N.C. 702,143 S.E. 471. In the case at bar there was one contract between the parties, and the testimony of plaintiff discloses that a dispute or controversy had arisen and existed between the parties long before the check was given. Hence the instruction of the trial judge was correct.
Complaint is made of the charge of the court upon the fourth issue, but the record discloses no exception to such instruction, and, therefore, *Page 800 
the same cannot be considered. The defendant pleaded no counterclaim, and the trial judge instructed the jury that in any event plaintiff is entitled to recover $23.50. But the jury in answer to the third issue found that the defendant "tendered" to the plaintiff the correct amount of money involved, and it must, therefore, be assumed that the tender was properly made and kept alive, and is now presently available. Moreover, the burden of showing error is upon the appellant.
No error.