This was an action instituted by plaintiff Cartwright, as executor of the estate of Sarah E. Elliott, to recover of defendants, W. B. Coppersmith, Sr., and wife, Lizzie Coppersmith, the sum of $2,500 evidenced by four notes executed by these defendants to Sarah E. Elliott in 1935 and 1936. In the complaint recovery of the amount due on the notes, together with interest and costs, was prayed. The defendants filed answer admitting the execution of the notes sued on and their liability thereon, but denied the notes were the property of the estate of Sarah E. Elliott, and alleged the notes in question were the sole property of Lydia Mae Whitehurst. They asked that she be made a party. Thereafter Lydia Mae Whitehurst, having been made party, filed separate answer, with other counsel, also admitting the execution by defendants Coppersmith of the notes sued on, and alleging that she was the sole owner of the notes by virtue of endorsement and delivery of the notes to her by Sarah E. Elliott in her lifetime. She prayed that she be adjudged owner of the notes sued on, and that she recover her costs in this behalf expended.
It was admitted that the balance due on the notes was $2,500 with interest from January 1, 1939. Mrs. Lizzie Coppersmith, a defendant and one of the makers of the notes, having died, W. B. Coppersmith, Sr., qualified as her administrator. In response to issues submitted, the jury found that the notes belonged to the estate of Sarah E. Elliott, and that the defendants Coppersmith were indebted to said estate in the sum due on the notes. Judgment on the verdict was rendered that plaintiff recover of defendants Coppersmith the amount so determined, together with the costs of action.
The defendant, Mrs. Lydia Mae Whitehurst, appealed.
The appellant, Mrs. Whitehurst, assigns error in the ruling of the court below in the exclusion of portions of the testimony of defendant W. B. Coppersmith, Sr. By this witness it was sought to prove certain personal transactions and communications between him and the deceased Sarah E. Elliott. Upon objection this testimony was excluded by the court on the ground that it was rendered incompetent by C. S., 1795.
While this statute provides specifically that "a party or person interested in the event" shall not be examined as a witness in his own behalf or interest, against the executor of a deceased person, concerning a personal transaction or communication with the deceased, it is urged that this witness, though a party to the action, was not interested in the event. Coppersmith admitted that he owed the notes, was able to pay them, and was indifferent to whom payment should be adjudged.
In the clear and comprehensive analysis of this statute by JusticeClark, in Bunn v. Todd, 107 N.C. 266, 11 S.E. 1043, parties and persons interested in the event of the action are placed in separate classifications. This was also the holding in Wilson v. Featherstone,122 N.C. 747, 30 S.E. 325, where this categorical expression appears: "Rankin is a party and incompetent"; and in Benedict v. Jones, 129 N.C. 475,40 S.E. 223, it was said, "It is immaterial whether he was or not interested in the land mortgaged. He is a `party to the action' and is excluded under the very terms of the section." In Wilder v. Medlin,215 N.C. 542, 2 S.E.2d 549, the Court used this language: "The restriction upon the introduction of testimony in the trial of an action contained in C. S., 1795, refers by its express terms to a person who is a party to the action (Benedict v. Jones, 129 N.C. 475, 40 S.E. 223;Grier v. Cagle, 87 N.C. 377), or interested in the event, and prohibits his examination as a witness in his own behalf, against the administrator of a deceased person, concerning a personal transaction or communication between him and the deceased. Bunn v. Todd, 107 N.C. 266, 11 S.E. 1043;Bank v. Wysong Miles Co., 177 N.C. 284, 98 S.E. 769." In Johnson v.Cameron, 136 N.C. 243, 48 S.E. 640, the language is "The Code, sec. 590 (C. S., 1795), disqualifies a party to an action, or one interested in the event thereof." See also Ballard v. Ballard, 75 N.C. 190; Brown v. Adams,174 N.C. 490, 93 S.E. 989.
However, in Allen v. Allen, 213 N.C. 264, 195 S.E. 801, where T. W. Allen and wife pooled their respective lands and by deeds divided them among their children, when an action arose between certain of the children, the testimony of J. N. Davis, the husband of one of the daughters, as to communications with T. W. Allen, deceased at time of trial, was held not incompetent under C. S., 1795. Said Barnhill, J., speaking for the Court, "A husband is not precluded from testifying in behalf of *Page 576 
his wife in a lawsuit in which the provisions of said statute may be invoked. It may be noted, however, that this is not a suit between the estate of T. W. Allen and the wife of J. N. Davis." J. N. Davis was a nominal party defendant in that case.
In Coward v. Coward, 216 N.C. 506, 5 S.E.2d 537, Wm. Coward and his wife entered into an agreement to pool their lands for division among their children. An action in relation thereto subsequently arose between the children. At that time the wife of Wm. Coward was dead, as was also one of the sons whose representatives were parties defendant. Wm. Coward was a party plaintiff. In an opinion by Schenck, J., the following language was used: "The assignments of error relating to the testimony of William Coward, one of the plaintiffs, to the effect that the said Wm. Coward and his wife, Mary Argent Coward, had entered into an agreement to pool their lands and divide them among their children upon the ground that Wm. Coward was `a party interested in the event' and was being examined as a witness against the survivors of a deceased person in violation of C. S., 1795, are untenable, for the reason that it appears from the pleadings and from the evidence that the estate of Wm. Coward in the lands involved would be the same irrespective of which parties prevailed in this action, his interest being a life estate as tenant by the curtesy in any event. William Coward had no interest in the event, that is, he had no legal or pecuniary interest, such as is required by the statute, in the result of the litigation."
It is not understood that the Court intended by the decision on the facts presented in the case last cited to establish the interpretation of the statute to the effect that a necessary party to the action would be rendered competent to testify to a personal transaction with the deceased if he was not interested in the event of action. The question whether a mere nominal party, who has no interest in the event of the action, is disqualified is not necessarily presented on the record in this case. It was contended with some force that W. B. Coppersmith, Sr., was not only a necessary party but that he had a direct pecuniary interest in the event of the action, and was thus testifying in his own behalf or interest. The purpose of the plaintiff's action was to recover from him $2,500, and also the costs of the action, while the interplea of Mrs. Whitehurst prayed only that she be adjudged owner of the notes, and that she recover her costs. Furthermore, it appears that defendant Coppersmith retained counsel, actively defended the action, and sought to defeat plaintiff's recovery. Hence, it was argued that under any construction of the statute he was rendered incompetent to testify to a personal transaction or communication with the deceased.
However, we find it unnecessary to determine the correctness of the ruling of the court below in sustaining the objection to the proffered *Page 577 
testimony of W. B. Coppersmith, for we think the testimony which would have been given by this witness, if allowed, was insufficient to show a valid transfer of the title to the notes in question from Sarah E. Elliott to Mrs. Whitehurst, since there was no evidence of delivery of the notes, actual or constructive. Whether the transaction which constituted the basis of the appellant's case be regarded as the assignment of a negotiable instrument (C. S., 3010), or a gift inter vivos, in order to vest the title to the notes in Mrs. Whitehurst it must have been completed by delivery, actual or constructive, and the burden was upon her to show this.
Mr. Coppersmith, in the absence of the jury, was examined as to the circumstances of the transaction and communications between him and the deceased. Upon this evidence alone Mrs. Whitehurst relied to make out her case. The pertinent portions of the excluded testimony tended to show that while the witness was on a visit to Sarah E. Elliott, in 1937, she asked him to assign the Coppersmith notes to Mrs. Whitehurst. "She wanted her to have those notes after her death. The only thing she wanted was the interest as long as she lived, and she wanted me to pay the notes to Mrs. Whitehurst." Witness advised her the only way she could do that without making a will was to endorse the notes and make them payable to Mrs. Whitehurst. The notes were kept in an envelope in the possession of Sarah E. Elliott, and she went and got them and brought them to a little table in the room near the door. Not having a pen convenient, the witness wrote with pencil on each note, "Pay within note to Lydia Mae Whitehurst without recourse," and Sarah E. Elliott signed the endorsement on each note and retained possession of the notes. That was 10 July, 1937. Mrs. Whitehurst was there, standing in the door. Witness further stated that he paid the interest on the notes afterwards; that he saw the notes some six or twelve months before her death (in 1940) in possession of Sarah E. Elliott at her home, and the endorsements were still on them. Afterwards, he or his son paid the interest "in the office there," and when witness saw them the endorsements had been erased, but the notes showed dimly the endorsements and date. Witness did not make the erasures and did not know who did. Sarah E. Elliott never said anything to him about it.
The testimony of this witness was offered as "defendants' evidence," and was the only evidence offered by defendants. After defendants rested plaintiff Cartwright testified that he was one of the executors of Sarah E. Elliott, and that he first came into possession of these notes in November, 1939; that Sarah E. Elliott had possession of them before they came into his possession; that at the time the notes came into his possession there were no endorsements on them, but he could see that there had been endorsements thereon which had been erased; that he *Page 578 
did not erase the endorsements; that after the notes came into his possession he collected some interest from Mr. Coppersmith. Defendant Whitehurst moved to amend the prayer for relief in her pleading so as to ask for judgment against the makers of the notes for the amount thereof and for costs, but the record does not show that this motion was allowed.
The burden of proof was upon Mrs. Whitehurst to show not only the endorsement of the notes by Sarah E. Elliott, but also that the intention to give or assign them to her was completed by delivery, actual or constructive. In this we think she has failed, even if the entire evidence of Mr. Coppersmith had been admitted.
It is provided by C. S., 3010, that if a negotiable instrument is made payable to order (as were these notes) the transfer from one person to another is "by the endorsement of the holder, and completed by delivery." To constitute delivery there must be a parting with the possession and with power and control over it by the maker or endorser for the benefit of the payee or endorsee. To constitute delivery it must be put out of possession of the endorser. Barnes v. Aycock, 219 N.C. 360, 13 S.E.2d 611. An actual delivery, however, is not essential, and a constructive delivery will be held sufficient if made with the intention of transferring the title, but there must be some unequivocal act, more than the mere expression of an intention or desire.
The general rule is stated in 7 Am. Jur., p. 809, as follows: "While it is not indispensable that there should have been an actual manual transfer of the instrument from the maker to the payee, yet, to constitute a delivery, it must appear that the maker in some way evinced an intention to make it an enforceable obligation against himself, according to its terms, by surrendering control over it and intentionally placing it under the power of the payee or of some third person for his use."
In Newman v. Bost, 122 N.C. 524, 29 S.E. 848, involving the validity of a gift, we find this application of the rule: "It being claimed and admitted that the life insurance policy was present in the bureau drawer in the room where it is claimed the gift was made, and being capable of actual manual delivery, we are of the opinion that the title to the insurance policy did not pass to the plaintiff, but remained the property of the intestate of the defendant." An intention to give is not a gift. Without delivery the gift is but a promise to give, and being without consideration is not obligatory, and may be revoked at will. Adams v. Hayes, 24 N.C. 361
(368).
The most recent case in which this subject has been considered by this Court is Bynum v. Bank, 221 N.C. 101, 19 S.E.2d 121, where, in a well considered opinion by Denny, J., it was held that the delivery to the donee of the keys to a lock box with the statement by the donor, "Everything in that box is yours," was sufficient to go to the jury on the *Page 579 
question of delivery of the choses in action contained in the box. The distinction between that case and the case at bar is apparent.
It is true the fact of retention of possession by the endorser is not always fatal to a claim of constructive delivery. It is said in 10 C. J. S., p. 513: "There may be a delivery notwithstanding the maker keeps the note in his possession, where it is apparent that he intended to hold it for the benefit and as the agent of the payee." The same principle was stated by Justice Seawell in Everett v. Mortgage Co., 214 N.C. 778,1 S.E.2d 109.
But here the proffered testimony falls short of coming within that principle. According to the evidence no word was ever spoken by Sarah E. Elliott to Mrs. Whitehurst. The notes were retained in possession by the endorser, after signing the endorsement, without any declaration of agency or purpose other than that she wished the endorsee to have them after her death. The notes continued in her exclusive possession until some two years later when they came into the possession of J. M. Cartwright for her, with the endorsements erased. There was no parting of control over them either to the endorsee or to any other person for her benefit. The expressed intention did not contemplate a present transfer but a prospective donation. The intention not having been completed by delivery, title did not vest in the endorsee.
The defendant, Mrs. Whitehurst, noted exception to certain portions of the judge's charge to the jury. While we see nothing in the instructions themselves that should be held for error or prejudicial to this defendant, in the view we take of the case this becomes immaterial, since there was no evidence of delivery of the notes to the defendant Whitehurst so as to transfer the title to the notes to her.
The exceptions to the testimony of J. M. Cartwright cannot be sustained. There was nothing to render him incompetent to testify to facts within his personal knowledge. No self-serving or other declaration of the decedent was offered. Nor did this testimony open the door for the admission of the testimony of W. B. Coppersmith, as this was offered subsequent to the testimony of Coppersmith. Even if this could be held, under the rule inWalston v. Coppersmith, 197 N.C. 407, 149 S.E. 381, sufficient to let down the bars, Coppersmith's testimony was not thereafter reoffered.
After careful consideration of the entire case, we reach the conclusion that the result below must be upheld.
No error. *Page 580