KELLOGG COMMISSION COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15705.   Promulgated February 10, 1949.

*Hayner N. Larson, Esq.*, for the petitioner.
*Jackson L. Boughner, Esq.*, for the respondent.

184

OPINION.

ARUNDELL, *Judge*: The sole question herein is whether, in computing petitioner's excess profits tax credit for 1944, the credit balances owing by petitioner to the shippers with whom it dealt and in respect to which petitioner issued promissory notes qualified as "borrowed capital" within the meaning of section 719 (a) (1) of the Internal Revenue Code.[1]

The corporate taxpayer's excess profits tax credit under the invested capital method is computed upon the basis of its daily invested capital, which consists of the sum of its daily equity invested capital as determined under section 718, and its daily borrowed invested capital as determined under section 719 of the Internal Revenue Code. Section 719 (b) provides that "The borrowed invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be an amount equal to 50 per centum of the borrowed capital for such day."

To qualify an indebtedness under section 719 as borrowed capital, two requirements must be met. First, the taxpayer must show an outstanding indebtedness; second, such outstanding indebtedness must be evidenced by one of the seven types of documents specified. Both requirements must be met. *Canister Co.* v. *Commissioner*, 164 Fed. (2d) 579; certiorari denied, 333 U. S. 874.

As the credit balances in the instant case clearly represent bona fide indebtedness of the petitioner to its various shippers, the question is resolved to one involving the validity of the notes and whether the notes in fact "evidenced" the indebtedness of petitioner to the shippers.

Respondent argues that the petitioner never accomplished a valid delivery of the notes in question to the payees and that for this reason the notes never became valid and outstanding obligations. Petitioner is doubtless correct in his contention that an actual manual transfer of a note from the maker to a payee is not indispensable. Cf. 7 Am. Jur. 809; *Cartwright* v. *Coppersmith*, 222 N. Car. 573; 24 S. E. (2d) 246. In *Miller* v. *Hospelhorn*, 4 Atl. 2d 728, 733, the Court of Appeals of Maryland set out the following rule regarding constructive delivery:

The final test is, did the endorser of the notes, at the time of their issuance, do such acts in reference to them as evidenced an unmistakable intention to pass title to them and thereby relinquish all power and control over them?

---

[1] SEC. 719. BORROWED INVESTED CAPITAL.

(a) BORROWED CAPITAL.—The borrowed capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following :

(1) The amount of the outstanding indebtedness (not including interest) of the taxpayer which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, or deed of trust, plus,

\*   \*   \*   \*   \*   \*   \*

The intent of the maker or endorser must be determined on all of the facts attendant upon the alleged delivery. Upon the record in the instant case, we are convinced that petitioner never intended that the notes issued in respect to the credit balances should be delivered to the shippers and that thereafter it should be completely divorced from all control and dominion over them.

The indebtedness herein represented the proceeds of sales of grain and seed handled by the petitioner for its shippers. Petitioner retained this money until demand for payment was made, and under the rules of the grain exchanges it paid the maximum permissible rate of interest on all money left with it. This money was subject to withdrawal at any time in much the same manner as money left on deposit in a bank. The amounts owing by the petitioner to its shippers fluctuated constantly due to the fact that the shippers regularly withdrew money left with the petitioner and the petitioner from time to time handled additional sales of grain for the shippers and credited the proceeds of such sales to their accounts. It is obvious that the actual delivery of the notes without any restriction upon their negotiability and without any means of rapidly recalling them for cancellation would have had a serious effect upon the petitioner's business. Initially, petitioner rendered the notes nonnegotiable by striking the words "the order of" from the face of the notes. Thereafter, it dispatched a letter notifying each of its shippers of the execution of the notes and the difficulties which could be anticipated if a manual delivery of the note was desired.

The parties thereafter, for all practical purposes, ignored the notes and continued to regard the credit balances as shown on the petitioner's books as the real evidence of the indebtedness. It is conceded that at any particular time one would have had to resort to petitioner's books to determine the exact amount of the indebtedness owing to each of the shippers. The notes served no real business purpose, but were admittedly issued solely for the purpose of securing a tax advantage.

That neither petitioner nor the shippers regarded the notes in question as true outstanding obligations is indicated by the fact that the original notes were canceled and substitutes issued solely upon the petitioner's initiative and without any notice to the payees. Payments on the indebtedness were not recorded on the notes, but were reflected only on the petitioner's regular books of account. No separate accounts for the notes were maintained by petitioner on its books, nor were they ever listed as note obligations on petitioner's balance sheets or in public reports made by it. It appears that the practice of issuing

notes in respect to the credit balances could have been discontinued by the petitioner as easily as it had been adopted.

In the light of these facts, it is clear the petitioner had no intention of relinquishing control and dominion over the notes. Petitioner took no chance that these notes would find their way into regular commercial channels. As such instruments were completely incompatible with petitioner's business operations, sufficient control over them was retained by it to forestall the confusion that would have resulted from actual manual delivery to each payee. This control negatives any claim of its having effected a valid constructive delivery.

These same facts lead us to the conclusion that the indebtedness petitioner seeks to qualify as "borrowed capital" was not in fact "evidenced" by the notes in question. The fluctuation in the credit balances obviously resulted in a constant discrepancy between the amount shown as owing by the notes and that indicated on the petitioner's ledger account. During the course of business, the credit balances varied from day to day and no effort was made to correct the notes until major changes took place and the petitioner considered a new note desirable. Payments made by petitioner were recorded on the ledger account and not credited on the notes. These considerations, in addition to the other facts which we have already recited herein, point to the fact that the indebtedness owing by petitioner to its shippers was in reality "evidenced" by the open account on its books and not by the notes in question.

Therefore, we are of the opinion that the indebtedness owing by petitioner to each of its shippers was not "borrowed capital" within the meaning of section 719 (a) (1) of the Internal Revenue Code. The respondent's determination in this respect must be sustained.

Reviewed by the Court.

*Decision will be entered under Rule 50.*