VIRGINIA LAMM HAYES AND HUSBAND, J. F. HAYES; BESSIE H. LAMM; ZELMA LAMM POYTHRESS AND HUSBAND, T. M. POYTHRESS, AND TEMPIE ANN HAYES, AN INFANT APPEARING HEREIN BY HER NEXT FRIEND, J. W. HARRISON, v. EUNICE WILLIAMSON DECKER RICARD AND FREE WILL BAPTIST ORPHANAGE, INC.

(Filed 26 June, 1956.)

**1. Actions § 6—**

The nature of an action is determined by the issues arising on the pleadings and by the relief sought, and not its denomination by either party.

**2. Ejectment § 10: Quieting Title § 1—**

Where title to land is in controversy and plaintiff seeks to recover possession from defendant and for an accounting of rents and profits, the action is one in ejectment and not merely to remove cloud upon title.

**3. Ejectment § 15—**

In an action in ejectment plaintiffs must recover on the strength of their own title.

**4. Ejectment § 17—**

In an action in ejectment in which the pleadings raise the issue of title, it is error for the court to discharge the jury and enter judgment declaring plaintiffs to be the owners and ousting defendant from possession.

**5. Evidence §§ 13, 32—**

Where a party claiming under a deceased person examines the attorney for the deceased in respect to the execution and delivery of deeds to the land in controversy and the consideration therefor, such examination constitutes a waiver of the rule that communications between attorney and client are-privileged and also a waiver of G.S. 8-51 in respect to communications or transactions with a decedent, and the other party is entitled to cross-examine the attorney as to such transactions. However, the waiver does not apply to other and independent transactions.

**6. Deeds § 4—**

Consideration sufficient to support a conveyance is not confined exclusively to the payment of money, but the discharge of a debt or obligation of the grantor, accepted as such by the grantee, is sufficient consideration to support a conveyance.

**7. Bill of Discovery § 6: Evidence § 32—**

A pre-trial examination of a witness under G.S. 1-568.1, et seq., in regard to a transaction or communication with a decedent is a waiver of the protection afforded by G.S. 8-51 to the extent that either party may use it upon the trial.

**8. Evidence § 32—**

Where a party waives provisions of G.S. 8-51 by examining a witness in regard to transaction or communication with a decedent, such waiver continues throughout the proceedings, including a second trial of the same cause.

**9. Estoppel § 10—**

Plaintiffs claiming as devisees under a will are bound by an estoppel which could have been asserted against their testator, and evidence tending to show an estoppel in pais against the testator is competent against plaintiffs.

APPEAL by the defendant Eunice Williamson Decker Ricard from *Bone, J.*, December 1955 Civil Term, WILSON Superior Court.

The complaint alleged the purpose of this civil action is to remove cloud upon the title to a certain specifically described tract of farm land containing 62.70 acres, located in Wilson County. The plaintiff Bessie H. Lamm is the widow, and the plaintiffs Virginia Lamm Hayes and Zelma Lamm Poythress are daughters of Grover T. Lamm, deceased. J. F. Hayes and T. M. Poythress are the husbands of the daughters. The Free Will Baptist Orphanage is a North Carolina corporation with its place of business in the Town of Middlesex.

Grover T. Lamm died on 14 December, 1952, leaving a last will in which he devised certain specifically described lands to his wife and daughters with certain limitations and conditions attached. The will did not specifically describe the land in controversy but it did contain a residuary clause devising to the plaintiffs, and contingently to the

orphanage, all the testator's lands not otherwise disposed of. The orphanage declined to become a plaintiff and was made a defendant.

The plaintiffs alleged in substance that about 12 April, 1945, Grover T. Lamm purchased from Nana Louise Parker, Annie Parker Phillips and Ellis Elma Phillips the land in controversy and had the title conveyed to R. A. Stamper. On 3 April, 1945, R. A. Stamper and wife executed and delivered a fee simple deed to Grover T. Lamm, who entered into possession. The deed was filed for record at 3:00 p.m. on 23 December, 1952, after Mr. Lamm's death. There appears of record a paper writing dated 7 September, 1946, purporting to be a quit-claim deed from R. A. Stamper and wife to the defendant Eunice Williamson Decker (now Ricard) purporting to convey to her all the grantor's right, title and interest in the Parker or Phillips farm. The deeds are made a part of the complaint.

Plaintiffs further alleged in substance that the quit-claim deed under which the defendant Decker (now Ricard) claims is invalid for that (1) she is not a purchaser for value; (2) the conveyance was without consideration and in fact was never delivered; (3) at the time of its execution the grantor had no interest to convey; (4) even if delivered, the quit-claim deed was without consideration and not registered within two years from the date of its delivery; that the defendant's quit-claim deed constitutes a cloud upon the plaintiffs' title which they are entitled to have removed. Finally, the plaintiffs alleged that the defendant Ricard is in the wrongful possession of the land in controversy and wrongfully withholds possession from them; that she has received and is receiving the rents and profits of the value of $3,000 per year. Plaintiffs asked the following relief:

1. That the quit-claim deed be declared null and void and canceled of record.

2. That plaintiffs be declared to be the owners of the land in controversy.

3. That defendant Ricard be ousted from possession and be required to account for rents and profits.

4. That a receiver be appointed to take charge during the pendency of this action.

The defendant Ricard, by answer, alleged in substance:

1. That she is the owner and in the lawful possession of the land in controversy.

2. That the plaintiffs are estopped to claim or assert any title or interest in the land in controversy by reason of the acts, conduct and deeds of Grover T. Lamm, the plaintiffs' predecessor in title, for that:

a. He placed her in possession as owner.

b. He recognized her as owner and allowed her to make valuable improvements under the assurance that her title was good.

c. He assured her he had taken all necessary legal steps to make her title good to the end that no person claiming under him could disturb her title or possession.

d. He was the actual owner, though he had the naked legal title taken in the name of Stamper, his agent, and when he procured his agent to convey the land to this defendant by the quit-claim deed, the same was in law and in effect the quit-claim deed of the principal, Grover T. Lamm, and that the plaintiffs claiming under Grover T. Lamm are estopped to deny the validity of his deed.

For a further defense, the defendant Ricard alleged: When she was a child 15 years of age, Grover T. Lamm seduced her and from that time until he had the deed executed to her and placed her in possession of the farm that he had cohabited with her. For and in consideration of past cohabitation and past injury to her when she was a child, he caused the deed to be executed in furtherance of an agreement to that effect between them. And if the deed did not execute their contract, she is entitled to have the same specifically performed. She accepted Stamper's deed to her in lieu of a fee simple deed without warranty which Grover T. Lamm executed and acknowledged and delivered to her. This she surrendered at his request so that his name would not appear in the conveyance to her. He assured her he had delivered a deed to Mr. W. A. Lucas which made her title unassailable.

The plaintiffs, by reply, denied the material averments of the answer and alleged in substance that the defendant Ricard is estopped to deny the title of Grover T. Lamm by having become a tenant; and that she and her family are now holding over as tenants. The plaintiffs' predecessor in title made no contract in writing to convey the land in controversy; that more than three years and more than 10 years have elapsed since the defendant's alleged cause of action accrued, and that the same is barred by the statute of limitations.

The defendant Free Will Baptist Orphanage filed answer admitting the allegations of the complaint and joined in the plaintiffs' prayer for relief. It denied the material allegations of the defendant's further defense.

Upon the trial, the plaintiffs introduced the following deeds: (1) From Nana Louise Parker, Annie Parker Phillips and husband, to R. A. Stamper, dated March 24, 1945; (2) from R. A. Stamper and wife to Grover T. Lamm, dated April 30, 1945, (this is plaintiffs' Exhibit No. 1); (3) quit-claim deed from R. A. Stamper and wife, dated September 7, 1946, to the defendant Ricard, the latter for the purpose of attack, (plaintiffs' Exhibit No. 4). The plaintiffs also introduced the will of Grover T. Lamm, dated March 30, 1950.

W. A. Lucas, a witness for the plaintiffs, testified on direct examination: He was Mr. Lamm's attorney and friend for more than 40 years. He is one of the executors under Lamm's will. He kept in his office a manuscript folder containing Mr. Lamm's papers. He represented Mr. Lamm in the purchase of the land in controversy; paid to Parker and Phillips the balance of the purchase price after deducting a small amount to satisfy judgments. The Parker and Phillips deed was made to R. A. Stamper, a real estate broker who acted as agent for Mr. Lamm. Stamper paid nothing toward the purchase price totaling $12,000, all of which was paid by Mr. Lamm, "and no part of it was paid by anybody else." Shortly after the conveyance Stamper and his wife executed and acknowledged a fee simple warranty deed conveying the farm to Grover T. Lamm. The deed, introduced as plaintiffs' Exhibit No. 1, was delivered to the witness either by Mr. Lamm or by Mr. Stamper at Mr. Lamm's direction. The deed was kept by the witness, unregistered, at Mr. Lamm's direction. The witness delivered the deed to the plaintiff, Virginia Lamm Hayes, who is an executrix of the will. She filed it for registration. The witness also had and kept in his possession the quit-claim deed from R. A. Stamper and wife to the defendant Ricard, which was introduced as plaintiffs' Exhibit No. 4. The witness delivered the deed to the grantee Ricard shortly after Mr. Lamm's death. The defendant filed it for registration at 10:15 a.m. on December 23, 1952.

The plaintiffs' counsel stated it was not their purpose to interrogate the witness about anything that transpired between him and his deceased client and between him and his testator, and on behalf of the plaintiffs he claimed the privilege of all communications between the witness and Grover T. Lamm on account of the relationship of attorney and client and on account of the further fact that Grover T. Lamm is now dead.

Defendant's counsel sought to cross-examine Mr. Lucas about the circumstances relating to the execution and delivery to him of the deeds, plaintiffs' Exhibit No. 1, from the Stampers to Lamm, and No. 4, from the Stampers to the defendant Ricard, about which he testified on direct examination. Upon the plaintiffs' objection, the court excluded the following evidence: Mr. Stamper or Mr. Lamm left with him plaintiffs' Exhibit No. 1 from Stamper to Lamm, and that he prepared a deed conveying the same tract of land from Lamm to the defendant Ricard; and that the deed was a fee simple deed without warranty; that Mr. Lamm duly executed the deed, duly acknowledged it and left it with the witness with the following memorandum in the handwriting and signed by Grover T. Lamm: "August 8, 1945. W. A. Lucas, Trustee. In case of death before this transaction is settled it is

my request that you settle it and have this deed put on record at once. Grover T. Lamm." Later on, Mr. Lamm took up this deed and placed in its stead the quit-claim deed from the Stampers to the defendant to be delivered to the defendant Ricard in case Mr. Lamm did not close the transaction before his death.

The witness knew that Mr. Lamm bought the land in question for the defendant and that she was in possession of it. The witness had no instructions as to the delivery of the deed from Stamper to Mr. Lamm except those given him at the time of its delivery; that is, that he was to have it recorded at the same time he had Lamm's deed without warranty to the defendant recorded. The purpose of the whole transaction was to have title to the farm placed in the defendant Ricard on condition he did not change his instructions, and he never did change them. "In discussing with me some objection Miss Williamson (the defendant Ricard) had about the deed from him to her that he didn't want the deed to be direct from him to Miss Williamson, anyway, and he would rather have it come some other way, and he discussed the question of the conveyance being made to some third person and have them convey it and as a solution he asked Mr. Stamper to execute a quit-claim deed inasmuch as he had never had the deed from Stamper to himself recorded, and that the transaction would be handled in that way; and that is the reason it was substituted for the other." . . . "He said this woman had lived on his farm since she was a rather young girl and that he had been going with her and having relations with her for many years and he felt probably he had kept her from marrying and having a family and home of her own, and it was on his conscience and he was trying to do for her something which would compensate her for the injury he thought he had already done her."

All the foregoing evidence developed on cross-examination was offered, objected to by the plaintiffs on two grounds: That the communications were privileged because of the relationship of attorney and client, and because they were personal transactions with Mr. Lamm, now deceased. The objections were sustained and all the evidence excluded. The exclusion of this testimony is the basis of assignments of error Nos. 10 to 30, inclusive.

On re-direct examination by plaintiffs' counsel, which was also taken in the absence of the jury, Mr. Lucas testified: "I think the general knowledge among his friends at all times pertinent to the controversy, that is, at the time of making his will and all other documents, that the defendant was his mistress . . . It was my understanding that the relationship of paramour and mistress continued for many years. One of the reasons that the transactions were handled as they were handled was to avoid having Grover T. Lamm's name appear on the public records in any connection with this woman."

At the conclusion of the plaintiffs' evidence the defendant Ricard moved for judgment of nonsuit and excepted to the court's refusal to grant it. She testified that she had been in possession of the farm since 1946 and lived on it until about two years ago when she placed her father and mother in possession as her tenants; that she had a deed in her possession for the farm other than the Stamper deed. The court, on objection, refused to permit her to testify with respect to the deed without warranty which Mr. Lamm delivered to her and which she surrendered to him so that the Stamper deed could be substituted for it. During the argument over the admissibility of this evidence, the defendant introduced before the court the record of a previous trial of this cause (resulting in a mistrial in November 1954) at which the plaintiffs called her as an adverse witness and examined her with respect to the transactions with Mr. Lamm concerning the deeds, as well as their relationship. The court considered this prior adverse testimony but sustained the objections and refused to permit the defendant to testify to the transactions. The defendant duly excepted.

The defendant offered R. A. Grady as a witness who would have testified but for the plaintiffs' objection, which the court sustained, that he wrote policies of insurance on the buildings located on the Phillips property. First the policies were issued to Grover T. Lamm who gave instructions about how the policies should be issued. Later on, Mr. Lamm had the policies issued in the defendant Ricard's name and part of the time Mr. Lamm paid the premiums and part of the time Eunice paid them. "Mr. Lamm told me that Mr. Will Lucas had a deed that he had executed to Eunice and at all times he expressed to me that the property was Eunice's." The defendant excepted to the court's exclusion of the testimony.

Numerous other witnesses offered to testify to statements made by Mr. Lamm to the effect that the farm belonged to Eunice and that Mr. Lucas had her deed. All this evidence was excluded on objection and in each instance the defendant excepted. Tax records of Grover T. Lamm for the years 1949 and 1951 were introduced, showing he did not list the farm for taxes.

At the conclusion of all the evidence the court, on motion of the plaintiffs, withdrew the case from the jury and rendered judgment: (1) That defendant Ricard's claims, counter-claims and alleged causes of action be nonsuited; (2) that the cloud upon the plaintiffs' title be removed and to that end the defendant's quit-claim deed be canceled of record; (3) that subject to the terms of the will of Grover T. Lamm the plaintiffs and the defendant Free Will Baptist Orphanage are the owners and entitled to the possession of the land in controversy; (4) that the defendant Ricard be removed from possession; (5) that the

plaintiffs recover of the defendant Ricard the sum of $2,907.01, rents and profits during the time she was in possession. (The above amount was agreed upon and stipulated by the parties in the event of recovery by the plaintiffs.)

To the various rulings of the court and the judgment in accordance with the rulings, the defendant Ricard duly excepted and appealed, assigning errors.

*Gardner, Connor & Lee,*
*By: Cyrus F. Lee, for defendant Eunice W. Ricard, appellant.*
*Lamb, Lamb & Daughtridge,*
*By: V. F. Daughtridge,*
*Cooley and May,*
*By: Hubert E. May, for plaintiffs, appellees.*

HIGGINS, J. At the outset it is necessary to determine whether this action is simply to remove cloud upon title or whether it is a suit in ejectment. The nature of the action is not determined by what either party calls it, but by the issues arising on the pleadings and by the relief sought.

The plaintiffs alleged they are owners and entitled to possession of the land in controversy; that the defendant claims under a void conveyance; and that she is in wrongful possession and is unlawfully receiving the rents and profits. They asked that they be declared to be the owners; that the defendant's conveyance be canceled; that her possession be declared to be wrongful and that she be ousted and be required to account for rents and profits; and that a receiver be appointed pending the controversy.

The defendant denied the plaintiffs' claim of ownership, alleged title in herself and that she is lawfully in possession and lawfully receiving the rents and profits.

Analysis of the pleadings fixes this as an action in ejectment. *Baldwin v. Hinton,* 243 N.C. 113, 90 S.E. 2d 316; *Brite v. Lynch,* 235 N.C. 182, 69 S.E. 2d 169; *Smith v. Benson,* 227 N.C. 56, 40 S.E. 2d 451; *Vick v. Winslow,* 209 N.C. 540, 183 S.E. 750; *Satterwhite v. Gallagher,* 173 N.C. 525, 92 S.E. 369; *Prevatt v. Harrelson,* 132 N.C. 250, 43 S.E. 800; *Hines v. Moye,* 125 N.C. 8, 34 S.E. 103; *Mobley v. Griffin,* 104 N.C. 112, 10 S.E. 142. We quote from the *Baldwin* case, *supra:* ". . . but where, as here, the defendants are in actual possession and plaintiffs seek to recover possession, the action is in essence in ejectment."

The cases cited and relied upon by the plaintiffs to sustain their argument that this is simply an action to remove cloud upon title do not sustain their position. *Ely v. New Mexico and Arizona R. R.,* 129 U.S.

291, decided by the Supreme Court of the United States, was an action to remove cloud upon title. The plaintiff alleged (1) it was the owner; (2) the defendants claimed an interest adverse to the plaintiff; (3) that the defendants owned no interest. The plaintiff asked (1) that defendants be required to set forth their claim, (2) that a decree be entered that plaintiff's title is good and that the defendants have no interest, (3) that an injunction issue barring the defendants asserting any further claim. The defendants demurred and the demurrer was sustained by the Supreme Court of Arizona. The Supreme Court of the United States reversed. The allegations of the complaint, admitted by the demurrer, are only that the plaintiff is owner and that defendants actually have no interest but are attempting to assert an interest.

In *Pressly v. Walker,* 238 N.C. 732, 78 S.E. 2d 920, the plaintiffs alleged that as trustees of the Reformed Presbyterian Synod they are entitled to hold church property for the benefit of local congregation and that after a division in their Sardis Church the defendants and others took possession and claimed ownership and use of the property; that their possession is wrongful. The defendants demurred. Judge Pless overruled the demurrer and on appeal this Court affirmed. The allegations of the complaint, deemed admitted, were sufficient to entitle the plaintiff to remove the cloud.

In the case of *Barbee v. Edwards,* 238 N.C. 215, 77 S.E. 2d 646, the plaintiff brought an action to remove as a cloud upon his title a trustee's deed made 18 years after a purported sale under a deed of trust. The plaintiff claimed to have paid the amount due before the sale. At the close of the plaintiff's evidence a judgment of involuntary nonsuit was entered. The plaintiff's cause of action was based on the invalidity of the trustee's deed on the ground the purported sale was made after the amount due the *cestui que* trust had been paid in full and the right to sell thereby destroyed. This Court reversed the judgment of nonsuit and in the opinion, *Justice Johnson* said: "Here the plaintiff neither alleges nor attempts to prove that the defendant is in possession. The defendant's possession, if any there be, is left for the defendant to prove under his special pleas. *The plaintiff asks nothing by way of accounting and redemption.*" (Emphasis added.) His showing entitled him to proceed under G.S. 41-10 to remove the cloud.

In the case of *Speas v. Woodhouse,* 162 N.C. 66, 77 S.E. 1000, the plaintiff sought to remove cloud upon title and to restrain waste. The dispute arose over the legal effect of a partition deed executed to a husband and wife by the latter's brother in the division of land they inherited from their father. The plaintiff claimed as heir of the deceased wife. The defendant, the surviving husband, claimed by right of survivorship. This Court held: "The deed did not convey and create

any new estate, but only operated to sever the unity of possession between the tenants in common. . . . It (the land) constituted the wife's separate estate and she could not be deprived of it by the fact that in a deed from her brother her husband was named as co-owner," and that the plaintiff was entitled to have the deed removed as a cloud upon her title.

Analysis of the foregoing cases cited by the plaintiffs serves to emphasize the fact that the case at bar is more than an action to remove a cloud upon title—that it contains all the essentials of an action in ejectment. In this, as in all ejectment cases, the plaintiffs must recover on the strength of their own title.

"Where, in an action for the recovery of land and for trespass thereon, defendant denies plaintiff's title and defendant's trespass, nothing else appearing, issues of fact arise both as to the title of the plaintiff and as to the trespass by the defendant—the burden of proof as to each being on the plaintiff. *Mortgage Co. v. Barco,* 218 N.C. 154, 10 S.E. 2d 642." "In such an action plaintiff must rely upon the strength of his own title. This requirement may be met by various methods which are specifically set forth in *Mobley v. Griffin, supra." Smith v. Benson,* 227 N.C. 56, 40 S.E. 2d 451; *Moore v. Miller,* 179 N.C. 396, 102 S.E. 627.

In this case the burden of establishing title, therefore, is on the plaintiffs. In discharging the jury, entering judgment, declaring the plaintiffs to be the owners, and in ousting the defendant from possession of the land in dispute, the able trial judge committed error which makes it necessary to send the case back to the Superior Court of Wilson County for a jury trial. Ordinarily, it would be unnecessary to say more. However, we deem it not inappropriate to discuss some of the other questions raised by the assignments of error in the hope that the discussion will facilitate the trial.

More than 300 exceptions were taken to the exclusion of evidence. Manifestly, to discuss them *seriatim* would extend this opinion beyond reasonable bounds. The most that can be hoped for is to point out for the guidance of the attorneys and the court somewhat indefinite boundary lines separating competent from incompetent evidence. Left, however, to the trial court is the responsibility of ruling on objections to specific questions and answers as the occasion may require.

The plaintiffs examined Mr. Lucas as to the purchase of the Phillips farm by Mr. Lamm and the payment of the full purchase price by him, "and that no part of it was paid by anyone else." He testified he kept a file of Mr. Lamm's papers. Among others, plaintiffs' Exhibit No. 1, the deed from Stamper to Lamm; and plaintiffs' Exhibit No. 4, the quit-claim deed from the Stampers to the defendant Ricard. The witness further testified he delivered Exhibit No. 1 to the plaintiff, Mrs.

Hayes, and Exhibit No. 4 to the defendant Ricard. He testified that Stamper was a real estate broker and acted as agent of Mr. Lamm.

At the time of the purchase of the farm, payment of the purchase price, the execution and delivery of the deed, Mr. Lucas was attorney for Mr. Lamm. At the time he testified in the trial, he was one of the executors of Mr. Lamm's will. When the plaintiffs elected to examine this witness about the purchase, payment of the purchase price, the execution and delivery of the deeds, that Stamper acted as agent, they waived their right to keep their communications privileged. It became the right of the defendant to cross-examine the witness and to introduce pertinent evidence of other witnesses relating to those matters. The rule, with citation of authority, is thus stated by Wigmore: "A privileged person would seldom be found to waive if his intention not to abandon could alone control the situation. There is also the objective consideration that when his conduct touches a certain point of disclosure, fairness requires that his immunity shall cease whether he intended that result or not. He cannot be allowed, after disclosing as much as he pleases, to withhold the remainder. He may elect to withhold or to disclose, but after a certain point his election must be final. . . .

"The client's offer of his own or the attorney's testimony as to a specific communication to the attorney is a waiver as to all communications to the attorney on the same matter; for the privilege of secret consultation is intended only as an incidental means of defense, and not as an independent means of attack, and to use it in the latter is to abandon it in the former." Wigmore on Evidence, Vol. 8, 3rd Ed., sec. 2327.

The examination of Mr. Lucas, attorney and executor, with respect to the purchase of the Parker-Phillips farm, etc., was likewise a waiver of G.S. 8-51 with respect to the matters about which he testified. However, the waiver did not extend to other and independent transactions. *Sanderson v. Paul*, 235 N.C. 56, 69 S.E. 2d 156; *Batten v. Aycock*, 224 N.C. 225, 29 S.E. 2d 739; *Walston v. Coppersmith*, 197 N.C. 407, 149 S.E. 381; *Pope v. Pope*, 176 N.C. 283, 96 S.E. 1034; *Phillips v. Land Co.*, 174 N.C. 542, 94 S.E. 12.

It follows, therefore, that the trial court committed error in excluding so much of the cross-examination of the witness Lucas as related to the transaction about which he testified on direct examination. The direct examination made it competent for the defendant Ricard to testify and to present other evidence with respect to the transaction involved in Mr. Lucas' direct testimony. That waiver continues until the end of the case. "A waiver at one stage of the trial should be final for all future stages." Wigmore on Evidence, Vol. 8, 3rd Ed., sec. 2328.

Mr. Lucas stated the full consideration for the farm was paid by Mr. Lamm "and no part was paid by anybody else." The plain impli-

cation is the defendant Ricard paid nothing. With that statement in evidence against her she had the right to show what consideration she paid. The law recognizes that under certain conditions the term "consideration" sufficient to support a conveyance is not confined exclusively to the payment of money. If Mr. Lamm recognized he owed a debt to the defendant and it was his intention to pay the debt by having a tract of land conveyed to her, and she accepted the land in satisfaction of the debt, such would be sufficient consideration for the conveyance. Mr. Lucas would have testified on cross-examination, if permitted, that prior to the execution of the deed to the defendant Mr. Lamm executed a will in which he made substantial bequest for the defendant's benefit; and that after the deed was executed and the defendant placed in possession of the farm the will was changed and the bequest left out. The evidence was competent as tending to show that Mr. Lamm recognized his obligation to the defendant and that the obligation was discharged by the conveyance.

The record discloses that the plaintiffs adversely examined the defendant Ricard for the purpose of obtaining evidence for use in the trial as provided in G.S. 1-568.1 to 1-568.16. That examination is a waiver of the protection afforded by G.S. 8-51 to the extent that either party may use it upon the trial. *Andrews v. Smith*, 198 N.C. 34, 150 S.E. 670.

Likewise, if the plaintiffs at the former trial called the defendant Ricard as an adverse witness, examined her in detail about her relations with Mr. Lamm as the record tends to disclose, such examination also would seem to be a waiver of G.S. 8-51 and would open the door for the defendant to testify in another trial in respect to the matters about which the plaintiffs examined her. They cannot force her to disclose facts favorable to them at one stage and thereafter deny her the right to disclose them when pertinent to her defense at another stage. *Norris v. Stewart*, 105 N.C. 455, 10 S.E. 912; *Meroney v. Avery*, 64 N.C. 312.

The defendant Ricard alleged that by the acts, conduct and deeds of Grover T. Lamm the plaintiffs are estopped to deny her title and right to possession of the farm described in her deed; and that they are likewise estopped to assert and set up, in opposition to her title, the deed from the Stampers to Mr. Lamm. The plaintiffs claim as devisees under Mr. Lamm's will. They therefore stand in his shoes. They can assert no better claim than he could were he the plaintiff. *Coward v. Coward*, 216 N.C. 506, 5 S.E. 2d 537. "He who is in privity stands in the shoes or sits in the seat of the owner from whom he derives his title and thus takes it with the burden attached." *Watford v. Pierce*, 188 N.C. 430, 124 S.E. 838.

The evidence offered and excluded tends to show that Stamper, agent, held only the naked legal title; that Grover T. Lamm was the equitable

owner. So that when Stamper and wife, under the direction of Lamm, executed the quit-claim deed to the defendant Ricard the deed in legal effect became Lamm's deed and may be treated as such.

The defendant Ricard offered evidence of matters *in pais* which tended to support her claim of estoppel. Its exclusion was error.

Reversed.