EULA WILKIE v. ROBERT HAROLD WILKIE, BETTY FOWLER AND MIL-
DRED McFALLS

No. 8129SC1118

(Filed 17 August 1982)

1. **Evidence § 11.8— Dead Man's Statute—waiver of statute to matters inquired about in answers to interrogatories**

   In an action to have a resulting trust declared in property which allegedly was inadvertently deeded solely to plaintiff's husband during their marriage, the trial court correctly concluded that the "filing and service of . . . interrogatories upon (plaintiff) and her answers thereto constitute[d] a waiver" by defendants of the incompetency of plaintiff's testimony under G.S. 8-51 to the extent of the matters inquired about in the interrogatories. The defendants

---

were not required to introduce the answers into evidence before a waiver would exist.

**2. Trusts § 19— resulting trust—sufficiency of evidence**

The evidence of a resulting trust was sufficient to survive defendants' motion for a directed verdict where the evidence tended to show that plaintiff and decedent were married in 1965; that in 1968 they discussed buying a piece of property; that plaintiff furnished $1,800 towards the purchase price of $4,000; that decedent furnished only $200; that plaintiff and decedent agreed that the deed would be made to both of them; that they later moved onto the property and built a residence thereon; that plaintiff put in excess of $7,000 in the land and improvements; that at the time of plaintiff's marriage to decedent she had approximately $16,000 in cash; and that after decedent's death, plaintiff saw that the deed to the property had been placed in decedent's name alone.

APPEAL by defendants from *Howell, Judge.* Judgment entered 21 May 1981 in Superior Court, HENDERSON County. Heard in the Court of Appeals on 7 June 1982.

Plaintiff initiated this action to have a resulting trust declared in property which she alleged was inadvertently deeded solely to her husband during their marriage. Plaintiff's husband (hereinafter decedent) died intestate on 21 September 1978. Plaintiff alleged in her Complaint that she and decedent agreed to purchase the property as tenants by the entirety and that she paid at least half of the purchase price of the lot and half of the cost of constructing the residence thereon. The defendants, decedent's children by a prior marriage, filed an answer claiming an interest in the property and disputing plaintiff's claim for a resulting trust. After considering plaintiff's evidence, the defendants choosing to present none, the jury found that defendants were trustees of a resulting trust in the property for plaintiff.

Defendants have appealed and have assigned error (1) to the admission of the plaintiff's testimony concerning her personal transactions and conversations with the decedent; (2) to the denial of their motion for a directed verdict; and (3) to the charge.

*Redden, Redden & Redden, by M. M. Redden, for plaintiff appellee.*

*Herbert L. Hyde for defendants appellants.*

BECTON, Judge.

[1]   By Assignments of Error Nos. 1, 2, 7, 8, 9, 10 and 12, defendants argue that the admission of plaintiff's testimony regarding transactions and communications with the decedent violated G.S. 8-51, the dead man's statute. G.S. 8-51 precludes an interested witness from testifying at trial about personal transactions or communications between the witness and a deceased person when either the witness or the person he. is testifying against derives his interest or title from, through or under the deceased person.

In ruling on the admissibility of plaintiff's testimony concerning transactions and communications with decedent, the trial court examined the file and heard arguments of counsel. The trial court found that defendants had submitted interrogatories to plaintiff pursuant to Rule 33 of the North Carolina Rules of Civil Procedure; that plaintiff answered the interrogatories; and that these answers were filed by the defendants. The trial court further found:

> 2.   . . . That beginning with interrogatory No. 7, the questions propounded related, at least, in part to "personal transactions" with the deceased, C. D. Wilkie; and related specifically to subject matter of this lawsuit. That plaintiff answered the interrogatories, and the answers contained statements by the plaintiff, which in part, are "personal transactions" with the decedent, C. D. Wilkie. That there was no objection by the plaintiff to the interrogatories or any one of them; and that there was no objection by the defendants to the answer of any of the interrogatories.

The trial court concluded that the "filing and service of these interrogatories upon Mrs. Wilkie and her answers thereto constitute[d] a waiver" by defendants of the incompetency of plaintiff under G.S. 8-51 to the extent of the matters inquired about in the interrogatories.

Defendants argue in their brief that since they did not offer the answers to the interrogatories into evidence, the dead man's statute was not waived. We agree with the trial court that, under the prevailing view set forth in North Carolina cases, the defendants were not required to introduce the answers into evidence before a waiver would exist. In *Hayes v. Ricard*, 244 N.C. 313, 93

S.E. 2d 540 (1956), the plaintiffs adversely examined the defendant to obtain evidence for use at trial as provided by the discovery statutes existing at that time. The *Hayes* Court concluded "that '[t]hat examination is a waiver of the protection afforded by G.S. 8-51 to the extent that either party may use it upon the trial.' " *Id.* at 324, 93 S.E. 2d at 549. The Court further indicated that a waiver at one stage of the trial would continue throughout the proceedings. *See* Brandis, North Carolina Evidence § 75 (2nd Rev. Ed. 1982). The reasoning in *Hayes* would also apply to the filing of interrogatories and their answers.

A decision by this Court further supports our conclusion that defendants waived the dead man's statute by filing the pertinent interrogatories and answers. In *Stone v. Homes, Inc.*, 37 N.C. App. 97, 102, 245 S.E. 2d 801, 805, *disc. review denied*, 295 N.C. 653, 248 S.E. 2d 257 (1978), we concluded that "waiver of an exception to incompetent evidence under G.S. 8-51 occurs when the objecting party *first succeeds* in eliciting the incompetent evidence." In the case before us the defendants succeeded in eliciting incompetent evidence under G.S. 8-51 after they served interrogatories upon plaintiff and filed the answers thereto.[1] By so doing, defendants waived the protection afforded by G.S. 8-51.

[2] Defendants next assign error to the trial court's denial of their motion for directed verdict. They contend that even assuming *arguendo* that the dead man's statute was waived and the plaintiff's testimony of her transactions and conversations with the decedent was admissible, the evidence still would not support the finding of a resulting trust in the property in plaintiff's favor. We disagree.

On a motion for a directed verdict, the trial court must consider whether the evidence presented is sufficient to go to the jury. In passing upon this motion, the evidence must be considered in the light most favorable to the non-movant. "That is, 'the evidence in favor of the non-movant must be deemed true, all

---

1. We note, as did the trial court below, that in Annot., 23 A.L.R. 3d 394 (1969), *Hayes, supra* was cited as supporting the view that a waiver is effected once the deposition is voluntarily taken or interrogatories served upon one who would otherwise have been incompetent as a witness. The foundation for this view rests upon the rule that it would be unfair to permit a party to obtain the benefits of discovery and then to reject the information elicited if it should be unfavorable to him.

conflicts in the evidence must be resolved in his favor and he is entitled to the benefit of every inference reasonably to be drawn in his favor.' (Citation omitted.)" *Rappaport v. Days Inn*, 296 N.C. 382, 384, 250 S.E. 2d 245, 247 (1979).

The evidence in the case *sub judice* when viewed in the light most favorable to the plaintiff shows the following: Plaintiff and decedent were married on 5 August 1965. Both parties had children by prior marriages. In 1968 plaintiff and decedent discussed buying the property at issue from Robert Reese. Decedent told plaintiff that he did not have the money and she thereafter furnished $1,800 towards the purchase price of $4,000. Decedent furnished only $200. Plaintiff and decedent agreed that the deed would be made to both of them. They later moved onto the property and built a residence thereon. Plaintiff continues to live on the property. She testified that she put in excess of $7,000 in the land and improvements. At the time of plaintiff's marriage to decedent she had approximately $16,000 in cash. On 21 September 1978 decedent died intestate. After his death plaintiff saw the deed to the property for the first time. The deed had been recorded in March 1968 and had been placed in decedent's name alone. Plaintiff indicated that she had never been to the office of the attorney who allegedly drafted this deed.

In further support of her allegation that decedent intended the deed to be in his and plaintiff's names and that she is therefore entitled to a resulting trust in the property as the surviving tenant by the entirety, plaintiff introduced into evidence county tax listings and tax receipts mailed to both her and decedent which showed taxes were paid on the property at issue. Additionally, other witnesses testified that decedent had told them that the property belonged to him and plaintiff. One of these witnesses testified that decedent told him he was glad plaintiff had bought this property. C. F. Dockins, an accountant who had known decedent, testified that decedent came to him and indicated that plaintiff wanted Dockins to draft a statement showing her investment in the property.

We believe the foregoing evidence was sufficient for the jury to find a resulting trust in the property in plaintiff's favor. "Resulting trusts relate to the situation where equity will raise a trust by reason of the nature of a transaction which indicates that

the parties would have intended a trust to be created although none was declared." Webster's Real Estate Law in North Carolina § 507 (Rev. Ed. 1981).

> The classic example of a resulting trust is the purchase-money resulting trust. In such a situation, when one person furnishes the consideration to pay for land, title to which is taken in the name of another, a resulting trust commensurate with his interest arises in favor of the one furnishing the consideration. The general rule is that the trust is created, if at all, in the same transaction in which the legal title passes, and by virtue of the consideration advanced before or at the time the legal title passes. (Citations omitted.)

*Cline v. Cline,* 297 N.C. 336, 344-345, 255 S.E. 2d 399, 404-405 (1979). The *Cline* Court extended the application of the resulting trust doctrine to the situation in which the person claiming the trust "proves a payment on the purchase price made to the grantee or grantor after the delivery of the deed but pursuant to a *promise made to the grantee* before the deed was delivered." *Id.* at 345, 255 S.E. 2d at 405. The Court explained, "There is no difference in principle between paying money toward the purchase price at the time of the delivery of a deed and contracting at that time to pay the same sum later and then paying it as promised." *Id.* at 346, 255 S.E. 2d at 406.

In *Cline* the Court found that there was sufficient evidence to establish either a constructive or resulting trust in plaintiff wife's favor in the land at issue.[2] In *Cline* the evidence tended to show that defendant husband had breached the husband-wife confidential relationship when he took title to his mother's farm in his name alone after representing to plaintiff that the land would be theirs after the mortgage thereon was paid. Relying upon this promise, plaintiff moved onto the property and contributed her money and labor toward payment of at least one-half of the mortgage. We believe that *Cline* is analogous to the case now before us. The evidence in the case *sub judice* tended to show that plaintiff promised to pay part of the purchase price of the property in return for a promise that the deed would be made to her and

---

2. The Court however indicated that the jury's finding, that a resulting trust was established, must be vacated because of the trial court's insufficient and confusing application of the applicable law in the charge.

decedent as tenants by the entirety; and that plaintiff thereafter made contributions toward the purchase price and improvements to the property. Again, this evidence was sufficient for the jury to find a resulting trust in plaintiff's favor.

Defendants' argument that a directed verdict should have been granted in their favor is grounded upon their contention that there was no evidence of any agreement between plaintiff and decedent made prior to the passage of title wherein plaintiff agreed to pay a portion of the purchase price of the property. They cite plaintiff's testimony on cross-examination where she indicated that Charles Fender was present when she made the arrangements with decedent "about the money being provided and how the deed would be made." She "guessed" this date was July 1968. The deed to the property was dated February 1968. Other evidence shows, however, that plaintiff and decedent discussed buying the property and agreed before the property was bought that the deed would be in both their names. Furthermore, Fender's testimony was that during hay season he saw plaintiff give some money to decedent who in turn gave the money to the grantor of the property. The next day decedent told him plaintiff had purchased the property. Fender's testimony merely shows that an exchange of money was made in his presence. Although the evidence was not entirely consistent, the jury reconciled the difference in plaintiff's favor. A directed verdict in defendants' favor was properly denied.

Defendants' other assignments of error concern alleged errors in the charge to the jury. They first argue that the court did not explain to the jury that a resulting trust could arise only when the person seeking the trust paid consideration before title passed or made an agreement to pay consideration before title passed. Upon examining the charge, we find it sufficient to refute this allegation. We also find no merit to defendants' argument that the court charged on irrelevant matters as well as matters which were unsupported by the evidence. Assuming, *arguendo*, that these violations did occur, defendants have failed to show any prejudicial error.

Having concluded that the trial court properly ruled on defendants' motions and properly charged the jury, we hold that the judgment in plaintiff's favor must be

Affirmed.

Judge MARTIN (Robert M.) and Judge MARTIN (Harry C.) concur.