BRIAN BREEDLOVE, A MINOR, BY HIS GUARDIAN AD LITEM, SHEILA A. HOWARD, HIS MOTHER, AND SHEILA HOWARD, INDIVIDUALLY PLAINTIFFS v. AEROTRIM, U.S.A., INC., A CORPORATION, ESTATE OF MATTHEW GELLERT, DEFENDANTS

No. COA00-456

(Filed 20 March 2001)

## 1. Evidence— conversations between plaintiff and deceased defendant—Dead Man's Statute—nonhearsay—no improper reference to settlement negotiations

The trial court did not err in a negligence case by allowing into evidence testimony regarding conversations between plaintiff mother and the now deceased defendant, because: (1) defendant's deposition of plaintiff regarding her conversation with deceased defendant constituted a waiver of the Dead Man's Statute's protection under N.C.G.S. § 8C-1, Rule 601(c); (2) portions of the taped answering machine message from the deceased defendant to plaintiff mother was not inadmissible hearsay since the statement was tendered to explain the subsequent conduct of plaintiff mother when she called the deceased defendant; and (3) admission of the answering machine message and plaintiff's testimony regarding her conversation with the deceased defendant did not violate the prohibition against reference to settlement negotiations under N.C.G.S. § 8C-1, Rule 408 and N.C.G.S. § 7A-38.1(1) since the trial court excluded reference to the negotiations before playing the message for the jury, the message was offered to show the context of the later conversation with plaintiff, and the admitted portions were not part of settlement negotiations.

## 2. Evidence— doctor's first deposition and second deposition—plaintiff's diagnosis—not misleading or prejudicial

The trial court did not err in a negligence case by allowing portions of the first deposition of a doctor into evidence in addition to the doctor's second deposition concerning plaintiff minor's updated diagnosis taken just five days before trial began,

because: (1) although the testifying doctor testified in the first deposition as to "possible" consequences of plaintiff's injuries, defendant cites no authority where the doctor updated the diagnosis of the injured plaintiff in terms of "probable" consequences in a later deposition; (2) the subsequent deposition identifies the conditions plaintiff had developed between dates of the depositions, and the treatments that were no longer necessary; and (3) admission of both depositions was neither misleading nor prejudicial.

### 3. Negligence— judgment notwithstanding the verdict— motion for new trial—properly denied

The trial court did not abuse its discretion in a negligence case by denying defendant's motion for judgment notwithstanding the verdict and alternatively for a new trial, because the evidence was properly admitted in the case and there was sufficient evidence to support the jury's verdict.

Defendant appeals from judgment entered by the Honorable Charles Lamm in Buncombe County Superior Court upon return of a jury verdict for plaintiffs. Heard in the Court of Appeals 30 January 2001.

*Dameron, Burgin & Parker, P.A., by Charles E. Burgin, for plaintiffs-appellees.*

*Roberts & Stevens, P.A., by Frank P. Graham, for defendant-appellant-Estate of Matthew Gellert.*

TYSON, Judge.

Defendant, Aerotrim, U.S.A., Inc. ("Aerotrim"), manufactured, marketed, and sold a "human gyroscope" amusement ride to defendant, Matthew Gellert ("Mr. Gellert"). Mr. Gellert contracted with the City of Asheville, North Carolina to operate the human gyroscope at the City's 1995 Bele Chere Festival.

On 30 July 1995, plaintiff, ten-year-old Brian Breedlove ("Brian"), attended the Bele Chere Festival. Brian paid five dollars to Mr. Gilbert to ride the human gyroscope. Mr. Gilbert strapped Brian in the ride at his waist and ankles. During the ride, the waist assembly came loose. Brian's upper body and legs fell backwards out of the spinning ride. Brian's ankles remain strapped to the ride, resulting in two broken ankles. Brian was immediately taken to the hospital where surgery was performed on both ankles.

## BREEDLOVE v. AEROTRIM, U.S.A., INC.

[142 N.C. App. 447 (2001)]

On 19 August 1996, Brian and his mother, Sheila Howard ("Ms. Howard"), commenced this negligence action against Aerotrim, Mr. Gellert, and the City of Asheville. On 19 February 1997, a default judgment was entered against Aerotrim. On 27 May 1997, the City of Asheville was granted summary judgment.

### "Howard-Gellert Motion in Limine"

On 14 November 1997, a mediated settlement conference was held between the plaintiffs and Mr. Gellert. Mr. Gellert telephoned Ms. Howard the evening following the settlement conference, leaving an answering machine message. Mr. Gellert expressed frustration with the mediation process, the length of time that had passed, and the fact that his attorneys were trying to "devalue the pain" and "trauma" Brian had gone through. Mr. Gellert stated he could possibly help plaintiffs and asked Ms. Howard to call him.

On 13 December 1997, Ms. Howard returned Mr. Gellert's call. According to Ms. Howard, Mr. Gellert stated that he was not "adamantly positive" that he had fastened Brian securely into the ride. This statement is contrary to his testimony given at his earlier deposition.

On 9 April 1999, Mr. Gellert died of cancer after an extended illness.

On 23 June 1999, defense counsel filed a motion *in limine* to exclude all testimony regarding conversations between Mr. Gellert and Ms. Howard. The trial judge granted the motion with regard to the answering machine message, but denied the motion with regard to Ms. Howard's telephone conversation with Mr. Gellert, except as it related to settlement negotiations.

### "Eglinton Motion in Limine"

On 29 August 1997, Brian was referred to Dr. Daniel Eglinton, a board certified orthopedic surgeon. Dr. Eglinton gave a videotaped deposition on 8 May 1998 ("first deposition"). In his first deposition, Dr. Eglinton described Brian's injuries and detailed the care and treatment given to Brian. Dr. Eglinton also commented on potential future outcomes and treatment for Brian.

On 1 July 1999, Dr. Eglinton gave a supplement videotaped deposition ("second deposition"). In the second deposition, Dr. Eglinton updated Brian's condition. Dr. Eglinton testified that Brian's potential

outcomes and treatments were more limited than he had identified in the first deposition.

On 2 July, Mr. Gellert filed a motion *in limine* to exclude certain portions of the first deposition. Defendant argued that portions of the first deposition were irrelevant in light of the testimony in the second deposition. This motion was denied. Both depositions were played at trial for the jury in their entirety, with a limiting instruction that portions of the first deposition were being admitted only to illustrate Dr. Eglinton's testimony and were not to be considered as substantive evidence.

---

The case was heard before the Honorable Charles Lamm and a duly empaneled jury at the 6 July 1999 Civil Session of the Superior Court of Buncombe County. Defendant, the Estate of Matthew Gellert, moved for a directed verdict at the close of plaintiffs' case and again at the close of all evidence. Both motions were denied. On 27 July 1999, a judgment was entered that Brian recover $275,000.00, and Ms. Howard recover $17,717.01, from defendants, jointly and severally.

Defendant filed a post-trial motion for Judgment Notwithstanding the Verdict and alternatively for a New Trial. The motion was denied. Defendant appeals.

### Issues

Defendant brings three issues on appeal to this Court: (1) whether the trial court committed reversible error by allowing into evidence testimony regarding conversations between Ms. Howard and Mr. Gellert; (2) whether the trial court committed reversible error by allowing portions of the first deposition of Dr. Daniel Eglinton into evidence; and (3) whether the trial court committed reversible error by denying defendant's motion for Judgment Notwithstanding the Verdict and, alternatively, for a New Trial.

### (1) Conversations between Ms. Howard and Mr. Gellert

[1] Defendant contends that the admission of Ms. Howard's testimony regarding conversations between her and Mr. Gellert (a) violated North Carolina's Dead Man Statute, N.C.G.S. § 8C-1, Rule 601(c), (b) was inadmissible hearsay under the North Carolina Rules of Evidence, N.C.G.S. § 8C-1, Rule 801, and (c) included improper references to settlement negotiations in violation of Rule 408, N.C.G.S. § 8C-1, Rule 408. We disagree.

**BREEDLOVE v. AEROTRIM, U.S.A., INC.**

[142 N.C. App. 447 (2001)]

### (a) North Carolina's Dead Man Statute

North Carolina's Dead Man Statute, formerly N.C.G.S. § 8-51, now codified as Rule 601(c) of the Rules of Evidence, N.C.G.S. § 8C-1, Rule 601(c), serves to disqualify the testimony of certain witnesses:

> **(c) Disqualification of Interested Persons.** Upon the trial of an action . . . a party or a person interested in the event . . . shall not be examined as a witness in his own behalf or interest . . . against the executor, administrator or survivor of a deceased person . . . concerning any oral communication between the witness and the deceased person.

Rule 601(c) excludes a witness' testimony "when it appears (1) that such a witness is a party, or interested in the event, (2) that his testimony relates to . . . a communication with the deceased person, (3) that the action is against the personal representative of the deceased or a person deriving title or interest from, through or under the deceased, and (4) that the witness is testifying in his own behalf or interest." *In Re Will of Lamparter*, 348 N.C. 45, 51, 497 S.E.2d 692, 695 (1998) (quoting *Godwin v. Wachovia Bank & Trust Co.*, 259 N.C. 520, 528, 131 S.E.2d 456, 462 (1963)).

At trial Ms. Howard testified regarding her conversation with Mr. Gellert as follows:

> [Mr. Gellert] expressed remorse and regret regarding Brian's injury. He needed, or I felt he needed to have reassurance that Brian and I did not hate him (the Court sustained an objection and gave a cautionary instruction "as to what she felt or she sensed," limiting her testimony to "what he said.") He said to me he was sorry, and that he hoped Brian was doing fine, and that he had spoken to his dad. He had given a lot of thought to what had happened, and what had occurred, and he had spoken to his father with whom he was extremely close. And, so it wasn't something that he was talking about lightly. He had really given a lot of thought. And, that he felt that if he were put on the witness stand at that point in time and asked if he could be [sic] adamantly positive about securing the pin, that he could not say that he was adamantly positive in doing that . . . He was upset with the time line, and how long it was taking . . . to, to get some settlement, to have some closure.

On its face, it appears that Ms. Howard's testimony comes within the prohibition of the Dead Man Statute.

However, our courts have long recognized that under certain circumstances, the representative of the deceased can waive the protection afforded by the Dead Man statute. *Smith v. Dean*, 2 N.C. App. 553, 559, 163 S.E.2d 551, 554 (1968). The door is opened for otherwise incompetent testimony when the objecting party first elicits such testimony. *Stone v. Homes, Inc.*, 37 N.C. App. 97, 102, 245 S.E.2d 801, 805, *disc. review denied*, 295 N.C. 653, 248 S.E.2d 257 (1978). Plaintiffs contend that defendant's deposition of Ms. Howard regarding her conversation with Mr. Gellert constituted a waiver of the Dead Man Statute's protection. We agree.

In *Hayes v. Ricard*, 244 N.C. 313, 93 S.E.2d 540 (1956), the plaintiff adversely deposed the defendant to obtain evidence for use at trial. "[E]xamination is a waiver of the protection afforded by [the Dead Man Statute] to the extent that *either party may* use it upon the trial". *Id.* at 324, 93 S.E.2d at 549 (emphasis supplied). A waiver at one stage continues throughout the proceedings. *Id. See also* Kenneth S. Broun, *Brandis and Broun on North Carolina Evidence* §145 (5th ed. 1998) ("If the representative [of the deceased] called the interested person as a witness, or **took his examination before trial,** or cross examined him . . . this constitutes a waiver, throughout the proceedings.") (emphasis supplied).

Defendant argues that since they did not offer the testimony at trial, the Dead Man Statute was not waived. This Court rejected a similar argument in *Wilkie v. Wilkie*, 58 N.C. App. 624, 294 S.E.2d 230 (1982). *Wilkie* concerned a dispute between the children of decedent's first marriage and Mrs. Wilkie, decedent's second wife. The children filed and served interrogatories upon Mrs. Wilkie inquiring about communications between Mrs. Wilkie and decedent. The children never sought to offer such testimony at trial. Mrs. Wilkie was allowed to testify as to her communications with decedent. This Court held that "the filing and service of interrogatories upon Mrs. Wilkie and her answers thereto constituted a waiver" by the children of the Dead Man Statute "to the extent of the matters inquired about in the interrogatories." *Id.* at 626, 294 S.E.2d at 231.

When the legislature revised the Dead Man Statute all existing case law exceptions were expressly reserved. The Official Commentary to Rule 601(c) states:

it was not the intent of the drafters . . . to change any existing cases where the Deadman's Statute has been held to be inap-

plicable, or where, because of actions of one party or the other the protection of the rule has been held to be waived.

In the present case, defendant elicited evidence of Ms. Howard's conversation with Mr. Gellert during their deposition of Ms. Howard. The defendant waived any protection afforded by the statute.

### (b) Hearsay

Defendant also assigns as error the trial court's admission into evidence of portions of the taped answering machine message from Mr. Gellert to Ms. Howard as inadmissible hearsay. The trial court had excluded the taped message in its ruling on the "Howard-Gellert Motion in Limine". Mrs. Helen Gellert, Mr. Gellert's widow, testified during the defense's case that she was not aware of any conversation between her husband and Ms. Howard in December of 1997. In response to this testimony, plaintiffs were allowed to play a small portion of the November 1997 message.

> Hello Ms. Howard, uh this is Matthew Gellert . . . uh please give me a call. I'll be in all evening, and I should be in most of tomorrow if you don't reach me tonight. Thank you.

Statements by one person to another are not considered hearsay if the statement is tendered to explain the subsequent conduct of the person to whom the statement was made. *State v. Reid*, 335 N.C. 647, 440 S.E.2d 776 (1994). The answering machine message explained what prompted Ms. Howard to later call Mr. Gellert. It was not error for the trial court to allow the jury to hear this small portion of the taped message, particularly after Mrs. Gellert had testified that she was not aware of any such conversation between her husband and Ms. Howard.

### (c) Reference to Settlement Negotiations

Defendant contends that the admission of the answering machine message and Ms. Howard's testimony regarding her conversation with Mr. Gellert violated the prohibition against reference to settlement negotiations found in Rule 408 of the North Carolina Rules of Evidence and N.C.G.S. § 7A-38.1(l). Rule 408 of the North Carolina Rules of Evidence prohibits "evidence of conduct or evidence of statements made in compromise negotiations." N.C.G.S. § 8C-1, Rule 408 (1999). N.C.G.S. § 7A-38.1(l) prohibits "evidence of statements made and conduct occurring in a mediated settlement conference." These rules, however, do not prohibit the presentation of evidence of

statements made in compromise negotiations, if offered for some other purpose. *Renner v. Hawk*, 125 N.C. App. 483, 492-93, 481 S.E.2d 370, 375-76, *disc. review denied*, 346 N.C. 283, 487 S.E.2d 553 (1997).

Mr. Gellert did talk about "mediation" and "settlement" during the answering machine message. However, the trial court excluded reference to the negotiations before playing the message for the jury. The message was admissible for the purpose of showing the context of the later conversation with Ms. Howard.

Defendant contends that Ms. Howard's testimony regarding her December 1997 conversation with Mr. Gellert also violates Rule 408. The trial court excluded portions of the conversation concerning the previous month's mediation conference. However, the trial court allowed Ms. Howard to testify as to the remainder of Mr. Gellert's remarks, including the fact that Mr. Gellert was not "adamantly certain" that he properly secured Brian in the ride.

Defendant claims that the entire conversation was a compromise negotiation. There is no mention of an intent to compromise or negotiate in the admitted portions of the conversation. As admitted, the testimony was not evidence of statements made in compromise negotiations, but an admission of fact during a telephone conversation initiated by a party to the dispute.

The trial judge properly determined that the admitted portions of the conversation were not part of settlement negotiations. This testimony was properly admitted into evidence.

### (2) Deposition Testimony of Dr. Eglinton

[2] Defendant argues that portions of the first deposition of Dr. Eglinton should have been excluded because they were no longer accurate at the time of trial. The first deposition was taken on 8 May 1998. This deposition contained a complete history of Dr. Eglinton's care and treatment of Brian up to that date. The testimony included medical illustrations, comments upon potential outcomes and future treatment.

The second deposition was taken five days before trial began. The second deposition was shorter, updating Dr. Eglinton's previous testimony. Dr. Eglinton testified about Brian's current condition, including his opinion that Brian's "growth plates" were now closed. This closure limited the potential outcomes and eliminated potential treatments identified in the first deposition. Dr. Eglinton clearly testified

BREEDLOVE v. AEROTRIM, U.S.A., INC.

[142 N.C. App. 447 (2001)]

to his updated diagnosis, and defense counsel extensively cross-examined him on these facts.

Defendant objected to portions of the first deposition regarding future treatments, disturbance of Brian's leg growth, potential medical problems, future prognosis, possibility of angular deformities and Brian's impairment rating. The trial court admitted both depositions in their entirety. The trial court limited the consideration of some of the accompanying exhibits to illustrative purposes only.

As a general rule, "a physician testifying as an expert to the consequences of a personal injury should be confined to certain consequences or probable consequences, and should not be permitted to testify as to possible consequences." *Fisher v. Rogers*, 251 N.C. 610, 614, 112 S.E.2d 76, 79 (1960). Defendant cites several instances in the first deposition where Dr. Eglinton testified as to the "possible" consequences of Brian's injuries. Defendant argues the admission of this testimony was reversible error. Defendant cites no authority where the testifying physician updated the diagnosis of the injured plaintiff in terms of "probable" consequences in a later deposition.

Reversible error is only found when the irrelevant evidence is of such a nature that it would mislead the jury or prejudice the opponent. *Brandis and Broun, supra* §81. The subsequent deposition identifies the conditions Brian had developed between dates of the depositions, and the treatments that were no longer necessary. Admission of Dr. Eglinton's depositions into evidence was neither misleading, nor prejudicial. This assignment of error is overruled.

### (3) Motion for New Trial and Motion for Judgment Notwithstanding the Verdict

[3] Defendant also argues that the trial court abused its discretion by denying its motion for Judgment Notwithstanding the Verdict, and in the alternative, for a New Trial. Defendant contends that the verdict was contrary to the greater weight of the competent evidence. In considering such a motion, the court considers "the evidence in a light most favorable to the non-movant, resolving all inconsistencies, contradictions and conflicts for non-movant, giving the non-movant the benefit of all reasonable inferences drawn from the evidence." *Pruitt v. Powers*, 128 N.C. App. 585, 590, 495 S.E.2d 743, 747, *disc. rev. denied*, 348 N.C. 284, 502 S.E.2d 848 (1998) (quoting *McFetters v. McFetters*, 98 N.C. App. 187, 191, 390 S.E.2d 348, 350, *disc. rev. denied*, 327 N.C. 140, 394 S.E.2d 177 (1990)).

STEWART v. SOUTHEASTERN REG'L MED. CTR.

[142 N.C. App. 456 (2001)]

We have ruled that the conversation between Mr. Gellert and Ms. Howard and the depositions of Dr. Eglinton were properly admitted into evidence, and hold that sufficient evidence exists to support the jury's verdict. Defendant's motion for a Judgment Notwithstanding the Verdict was properly denied. Also, the trial court did not abuse its discretion in denying defendant's motion for a New Trial. *See Corwin v. Dickey*, 91 N.C. App. 725, 729, 373 S.E.2d 149, 151 (1988) (reviewing denial of motion for a new trial under an abuse of discretion standard) *disc. rev. denied*, 324 N.C. 112, 377 S.E.2d 231 (1989).

No error.

Judges GREENE and JOHN concur.