J. MICHAEL WEEKS, EXECUTOR OF THE ESTATE OF DONALD H. GRUBB, DECEASED, PLAINTIFF-APPELLEE v. JAMES R. JACKSON; FALLS VALLEY I, LLC; AND FALLS VALLEY II, LLC, DEFENDANTS-APPELLANTS

No. COA09-1460

(Filed 21 September 2010)

**Evidence— Dead Man's Statute—no waiver of protection**

The trial court did not err in a wills case by excluding an affidavit submitted by defendant Jackson and thereafter granting the executor's partial summary judgment motion. The executor did not waive the applicability of N.C.G.S. § 8C-1, Rule 601(c) because he did not seek to elicit evidence of oral communications between the decedent and the opposing parties.

Appeal by Defendants from order and judgment entered 18 May 2009 by Judge W. Osmond Smith, III in Superior Court, Wake County. Heard in the Court of Appeals 14 April 2010.

*Kirk, Kirk, Howell, Cutler & Thomas, L.L.P., by C. Terrell Thomas, Jr., for Plaintiff-Appellee.*

*Williams Mullen, by Camden R. Webb and Elizabeth C. Stone, for Defendants-Appellants.*

McGEE, Judge.

J. Michael Weeks (Executor), executor of the estate of Donald H. Grubb (Decedent), filed a complaint on 17 July 2007, seeking to collect on a promissory note (the Note). Executor alleged in his complaint that James R. Jackson (Jackson), Falls Valley I, LLC (Falls I), and Falls Valley II, LLC (Falls II) were indebted to Executor in the amount of $30,000.00 plus interest. Jackson, Falls I, and Falls II filed an

answer and counterclaim on 17 September 2007, denying the alleged indebtedness and asserting a counterclaim of common law obstruction of justice.

Executor served Jackson and Falls I with requests for admissions and interrogatories, to which Jackson and Falls I replied in documents dated 19 March 2008. Executor filed a motion for partial summary judgment against Jackson and Falls I on 3 March 2009. In response to Executor's motion, Jackson filed an affidavit on behalf of himself and Falls I. Jackson's affidavit included a discussion of oral communications between Jackson and Decedent.

At a 20 April 2009 hearing on Executor's partial summary judgment motion, Jackson and Falls I (hereinafter Defendants) tendered supplemental responses to Executor's discovery requests. The supplemental responses again included information regarding oral communications between Jackson and Decedent. At the hearing, Executor moved to strike Jackson's affidavit. Executor also objected to Defendants' supplemental responses and made an oral motion to strike the responses. The trial court granted both of Executor's motions to strike. At this hearing, Falls II voluntarily dismissed its counterclaim.

In an order and judgment entered 18 May 2009, the trial court concluded that Jackson's affidavit and the supplemental responses "contain details of oral communications which are prohibited by Rule 601." The trial court further concluded there was no genuine issue of material fact and that the Executor was entitled to judgment as a matter of law, and entered summary judgment in favor of Executor. Executor voluntarily dismissed the claims against Falls II on 18 May 2009. Defendants appeal.

Based on the pleadings and discovery responses, the record shows that Defendants received a check in the amount of $30,000.00 from Decedent and deposited the check into the operational account of Falls I in August 2004. Defendants executed the Note on 4 August 2004 that stated: "Princip[al] and Interest due in one payment on or before January 28, 2005." The Note was payable to "Donald H. Grubb, heirs and or assigns" and was signed by Jackson, as "manager."

Defendants deny any obligation under the Note and assert that the Note was executed subject to a condition precedent. Arguing the defense of conditional delivery in their answer, Defendants filed Jackson's affidavit to show the existence of the condition precedent. Jackson's affidavit, containing an explanation of the circumstances

surrounding the original loan and the execution of the Note, stated that Decedent was Jackson's father-in-law and frequently consulted with Jackson concerning "business enterprises." Jackson had borrowed money from Decedent on prior occasions and had always repaid such loans. Decedent was "a consultant" on two of Jackson's building projects. One of the buildings "required upfit for one tenant with additional lease space to be secured by leases to other tenants." Jackson asked Decedent for $30,000.00 to complete "the upfit, with repayment based upon securing the additional tenants by January 2005." Because Jackson was unsure if Decedent would lend him the money, he "filled out a promissory note form" with a due date of 28 January 2005 and signed the Note. Jackson then mailed the Note to Decedent.

Jackson's affidavit further stated that Jackson later spoke with Decedent about the Note, and Decedent "agreed to be repaid if the upfit was undertaken upon the securing of the tenants by January, 2005." Decedent initially declined to lend Jackson the money, but then agreed to make the loan on 19 August 2004. According to Jackson's affidavit, he was unable to secure tenants for the real property, and he was therefore not obligated to repay the loan. Jackson further asserted that he "was never provided a copy of the [N]ote" and that he did not believe the Note was effective. Finally, Jackson's affidavit contained a paragraph in which Jackson recounted a conversation that occurred between Jackson and Decedent "about 18 months after the [N]ote was due" and shortly before Decedent's death. Jackson asserted that "[i]n that conversation, [Decedent] told [him] that[,] because the leasing was not completed by the due date, he did not need to be repaid and that nothing further needed to be done." Defendants' supplemental discovery responses that Defendants attempted to submit at the partial summary judgment hearing contained substantially the same information as Jackson's affidavit.

*I. N.C. Gen. Stat. § 8C-1, Rule 601(c)*

[1] Defendants argue that the trial court erred by excluding Jackson's affidavit and thereafter granting Executor's partial summary judgment motion. Specifically, Defendants argue that Executor waived the applicability of N.C.G.S. § 8C-1, Rule 601(c), commonly referred to as the Dead Man's Statute, by inquiring into protected matters through the discovery process.[1] Executor denies waiver.

---

1. The rule set forth in Rule 601(c) was formerly codified as N.C. Gen. Stat. § 8-51, which was repealed in 1984. *See Almond v. Rhyne*, 108 N.C. App. 605, 609, 424 S.E.2d 231, 233 (1993). Rule 601(c) disqualifies only evidence of "oral communications," where

Under N.C. Gen. Stat. § 8C-1, Rule 601(c)(2009), the testimony of interested parties under certain circumstances may be disqualified. Relevant here, Rule 601 provides that "a party . . . shall not be examined as a witness in his own behalf or interest . . . against the executor . . . of a deceased person . . . concerning any oral communication between the witness and the deceased person[.]" N.C.G.S. § 8C-1, Rule 601(c). Our Court recently stated that "[t]he purpose of this rule is to exclude evidence of statements made by deceased persons, 'since those persons are not available to respond.'" *Estate of Redden v. Redden*, 194 N.C. App. 806, 808, 670 S.E.2d 586, 588 (2009) (citations omitted).

Defendants do not challenge the applicability of Rule 601(c); rather, Defendants contend that the trial court erred by failing to find that Executor waived the protections of Rule 601(c) by "serving written discovery addressing the transaction at issue."

Our Courts have long held that a party may waive the protections of Rule 601(c) by inquiring into oral communications between the opposing party and the decedent. In *Wilkie v. Wilkie*, 58 N.C. App. 624, 294 S.E.2d 230 (1982), our Court discussed waiver of protections of the Dead Man's Statute, in a complaint filed by a decedent's second wife against the children of the decedent's first marriage. In *Wilkie*, the children filed and served interrogatories on the second wife, and the trial court made the following findings regarding the questions asked therein:

> [T]he questions propounded related, at least, in part to "personal transactions" with the deceased . . . and related specifically to [the] subject matter of this lawsuit. That plaintiff answered the interrogatories, and the answers contained statements by the plaintiff, which in part, are "personal transactions" with the decedent. . . . That there was no objection by the plaintiff to the interrogatories or any one of them; and that there was no objection by the defendants to the answer of any of the interrogatories.

*Id.* at 626, 294 S.E.2d at 231.

---

N.C.G.S. § 8-51 excluded evidence of "oral communications or transactions." *Compare* N.C.G.S. § 8C-1, Rule 601(c) *with* former N.C.G.S. § 8-51. However, pertinent to this opinion, the commentary to Rule 601(c) states that "[i]t was not the intent of the drafters of subdivision (c) to change any existing cases where the Dead Man's Statute has been held to be inapplicable, or where, because of the actions of one party or the other the protection of the rule has been held to be waived." N.C.G.S. § 8C-1, Rule 601, North Carolina Commentary; *see also Breedlove v. Aerotrim, U.S.A., Inc.*, 142 N.C. App. 447, 452-53, 543 S.E.2d 213, 217 (2001).

Our Court held that "the defendants succeeded in eliciting incompetent evidence under G.S. 8-51 after they served interrogatories upon plaintiff and filed the answers . . . . [Therefore, the] defendants waived the protection afforded by G.S. 8-51." *Id.* at 627, 294 S.E.2d at 231. In so holding, our Court noted that it was immaterial that the defendants had not actually introduced the responses to the interrogatories into evidence at trial; rather, " 'waiver of an exception to incompetent evidence under G.S. 8-51 occurs when the objecting party *first succeeds* in eliciting the incompetent evidence.' " *Id.* (citations omitted, emphasis in the original).

In *Redden*, our Court addressed the issue of waiver where the party asserting Rule 601(c) had "asked no questions soliciting evidence of oral communications between the decedent and defendant." *Redden*, 194 N.C. App. at 808, 670 S.E.2d at 588. In *Redden*, the "[e]state deposed defendant and offered the deposition testimony into evidence at the partial summary judgment hearing[.]" *Id.* We noted, however, that the "[e]state asked no questions soliciting evidence of oral communications between the decedent and defendant. In addition, answers by defendant relating to such oral communications were promptly objected to by [the] [e]state, with appropriate motions to strike." *Id.* Our Court concluded that the testimony should have been excluded because "[t]he incompetent testimony was not elicited by the [e]state for its own benefit, but offered by defendant, of her own volition, against the [e]state. These are precisely the types of statements the Dead Man's Statute seeks to disqualify as incompetent." *Id.* at 809, 670 S.E.2d at 588.

In our Court's recent opinion *In re Will of Baitschora*, —— N.C. App. ——, —— S.E.2d —— (NO. COA09-1141, filed 21 September 2010), we noted two instances where waiver would occur:

The mandates of Rule 601(c) and our prior case law on the issue of whether an interested party has "opened the door" and waived the protection of the Dead Man's Statute, has led to the rule that: if the question propounded by counsel to his own witness or an adverse witness specifically requires the witness to repeat oral communications with the deceased, then there has been a waiver under Rule 601(c)(1) or (3) by the party propounding the question. If, on the other hand, the question propounded by counsel to his own witness does not specifically require the witness to repeat oral communications with the deceased, and the answer given by his own witness provides an oral communication with the

WEEKS v. JACKSON

[207 N.C. App. 242 (2010)]

deceased, then there has also been a waiver under Rule] 601(c)(1) or (3) by the answering party.

*Baitschora,* —— N.C. App. at ——, —— S.E.2d at ——. Thus, if counsel directly solicits testimony otherwise privileged from either party, the privilege has been waived; likewise, if counsel does not directly solicit the information from his or her own witness, but that witness volunteers the information, the answering party waives the privilege. We find that a corollary not directly stated in *Baitschora* necessarily arises from these rules and applicable case law as discussed above: if counsel does not directly solicit privileged information, and the opposing party volunteers the information, waiver will not be imputed to the party conducting the inquiry. Thus, in the present case, we must begin our analysis of waiver by determining whether Executor asked "questions soliciting evidence of oral communications between" Decedent and Defendants. *Redden,* 194 N.C. App. at 808, 670 S.E.2d at 588; *see also Breedlove v. Aerotrim, U.S.A., Inc.,* 142 N.C. App. 447, 543 S.E.2d 213 (2001) (finding waiver where the defendant, seeking to exclude testimony concerning a conversation between a deceased employee and the plaintiff, had previously deposed the plaintiff concerning the conversation); *and Lee v. Keck,* 68 N.C. App. 320, 323, 315 S.E.2d 323, 326 (1984) (finding waiver where the "defendants had, during the course of discovery, served interrogatories on each plaintiff asking what promises or statements [the decedent] made to them").

In the case before us, Executor served requests for admissions on Defendants simultaneously with interrogatories. The requests for admissions served on Jackson contained the following:

1. Admit that you received $30,000.00 from [Decedent] in 2004, on or prior to August 4, 2004.

   . . .

2. Admit that Exhibit A is a true and accurate copy of the Promissory Note you executed in favor of [Decedent].

   . . .

3. Admit the genuineness of the Promissory Note attached hereto as Exhibit A.

   . . .

4. Admit that you signed the Promissory Note (a copy of which is attached hereto as Exhibit A) in your individual capacity.

**WEEKS v. JACKSON**

[207 N.C. App. 242 (2010)]

. . .

5. Admit that you signed the Promissory Note (a copy of which is attached hereto as Exhibit A) on behalf of Falls Valley I, LLC.

. . .

6. Admit that you signed the Promissory Note (a copy of which is attached hereto as Exhibit A) on behalf of Falls Valley II, LLC.

. . .

7. Admit that you signed the Promissory Note (a copy of which is attached hereto as Exhibit A) on behalf of a limited liability company.

8. Admit that you signed the Promissory Note (a copy of which is attached hereto as Exhibit A) on two different lines.

The requests for admissions served on Falls I sought similar admissions. Among the interrogatories submitted, Executor included the following interrogatory, labeled as interrogatory three: "If [Defendants] denied in whole or part any of the Requests for Admissions served simultaneously herewith, please state the complete factual basis for making each denial and identify all documents that support each denial."

Defendants submitted answers to the requests for admissions and to the interrogatories on 19 March 2008. In part, Defendants responded to the requests for admissions by admitting the genuineness of the Note itself, but denying that Decedent "loan[ed] money pursuant to the terms of the Note." Defendants' answer to interrogatory three was: "See Responses to Requests for Admission." At the 20 April 2009 hearing on Executor's motion for partial summary judgment, Defendants tendered "supplemental discovery responses" along with Jackson's affidavit. In their supplemental response, Defendants modified their answer to interrogatory three, to include a lengthy explanation of the terms of the loan and details of oral communications between Jackson and Decedent. Executor moved to strike Jackson's affidavit and Defendants' supplemental discovery responses, and the trial court granted Executor's motions to strike.

As quoted above, Executor's requests for admissions specifically targeted the "genuineness" of the Note and the signatures thereon. Executor did not request an admission that the loan was made pursuant to the terms of the Note. Further, in interrogatory three,

Executor asked for the complete factual basis for any denial of any request for admission. When read in conjunction with the requests for admission, this interrogatory seeks the factual basis for any denial as to the genuineness of the Note itself or the signatures thereon. We do not find that interrogatory three seeks to elicit evidence of oral communications between Decedent and Defendants, in part, because such evidence would be irrelevant to the fact of whether the Note or the signatures thereon were genuine.

We find these circumstances virtually indistinguishable from those in *Redden*. In the present case, as in *Redden*, Executor "asked no questions soliciting evidence of oral communications between the decedent and defendant." *Redden*, 194 N.C. App. at 808, 670 S.E.2d at 588. Further, when Defendants attempted to submit Jackson's affidavit and their supplemental discovery responses, Executor objected and moved to strike. Comparing Executor's discovery motions with the inquiries made in *Redden, Breedlove, Lee,* and *Wilkie,* we do not find that Executor was seeking to elicit evidence of oral communications between Jackson and Decedent. The fact that Defendants attempted to file supplemental discovery responses containing evidence of the oral communications is irrelevant in light of our determination that Executor did not solicit such evidence. We do not impute a waiver of Rule 601(c) to Executor simply because Defendants attempted to file answers to questions not asked by Executor. Because Executor did not seek to elicit evidence of the oral communications and, therefore, did not waive the protection afforded by Rule 601(c), the trial court properly granted Executor's motions to strike Jackson's affidavit and Defendants' supplemental discovery responses.

Defendants' remaining argument concerns whether the trial court erred in granting Executor's partial summary judgment motion. However, Defendants' sole argument as to partial summary judgment is premised on a finding of waiver of Rule 601(c) on the part of Executor. In light of our holding affirming the trial court's ruling on Executor's motion to strike, this argument is without merit.

Affirmed.

Judges STROUD and HUNTER, JR. concur.